William A. REED, Appellant,

v.

B. J. RHAY, Superintendent of Washington State Penitentiary, Appellee.

No. 18811.

United States Court of Appeals
Ninth Circuit.

Oct. 14, 1963.

Rehearing Denied Nov. 14, 1963.

---

Walters, Whitaker & Brazier and Ronald F. Whitaker, Yakima, Wash., for appellant.

John J. O'Connell, Atty. Gen., of Washington, and Stephen C. Way, Asst. Atty. Gen., of Washington, Olympia, Wash., for appellee.

Before CHAMBERS and BARNES, Circuit Judges, and KILKENNY, District Judge.

KILKENNY, District Judge.

STATEMENT

Appellant, a prisoner in the Washington State Penitentiary, commenced this proceeding by filing an application for a Writ of Habeas Corpus in the United States District Court for the Eastern District of Washington, under which application he claims that his constitutional rights, both State and Federal, have been denied.

On June 30, 1959, the appellant was convicted in the State Court of Washington of the crime of burglary in the second degree and, having been found guilty of being an habitual criminal under the Washington State Law, was sentenced to life imprisonment in the Washington State Penitentiary. From this conviction the appellant appealed to the Supreme Court of Washington, which affirmed the decision of the lower Court

on September 1, 1960. State v. Reed, 56 Wash.2d 668, 354 P.2d 395.

Subsequently, appellant filed certain applications in the District Court for Writs of Habeas Corpus, which applications were denied on the ground that appellant had failed to exhaust state remedies.

The appellant on January 12, 1962, filed an application for Writ of Habeas Corpus in the Washington Supreme Court, which application presented for decision the same issues which are here presented. This application was denied by an order of that Court sustaining the demurrer to the application. Thereafter, appellant's application for a Writ of Certiorari to the United States Supreme Court was denied.

Appellant filed the application for a Writ in the District Court in July, 1962. In October the proceedings had reached the Pre-Trial stage. A Pre-Trial Order reciting certain agreed facts and outlining the issues both of law and of fact was then entered. Certain of those issues are not here presented.

Presented for our decision are two principal issues:

(1) The validity of the decision of the lower Court that the information, on which appellant was convicted, charged a crime.

(2) The validity of the decision of the lower Court that the search and seizure, in issue, did not violate the United States Constitution.

## I.

Appellant was charged with a violation of R.C.W. 9.19.020.[1]

He was accused, under said statute, of the crime of burglary in the second degree, in an information, in part, reading as follows:

"He, the said William Archie Reed, in the County of King, State of Washington, on or about the 16th day of April, 1958, with intent to commit a crime therein, wilfully, unlawfully and feloniously did enter the dwelling of one Eugene F. Griffin, * * * in the City of Seattle, of said County and State."

Appellant's counsel, after an exceptionally thorough and time consuming analysis of numerous Washington and other cases, makes an exceptionally resourceful, if not convincing, argument that a proper construction of this statute requires us to hold that the information, on its face, does not charge a crime, in that it does not charge a "breaking".

■ Putting aside the niceties and persuasiveness of counsel's analysis and casually reading the language in question, we find a statute in common language, providing that a person may be guilty of the crime of burglary in the second degree by simply *entering a dwelling house of another* with intent to commit a crime therein, and further providing that there must be a "breaking" and entry in any other type of building or a part thereof. Here, the appellant was charged with the unlawful entry of a dwelling house. We are not concerned with the language of the statute touching upon other buildings. Manifestly, the information charged the appellant with the crime in the exact language of the statute. This being so, the information clearly states a crime. State v. Forler, 38 Wash.2d 39, 227 P.2d 727 (1951); State v. Johnson, 56 Wash.2d 700, 355 P.2d 13 (1960); State v. Bowman, 57 Wash.2d 266, 356 P.2d 999 (1960).

■ Aside from our conclusions, it appears that the Washington Supreme Court has decided adversely to appellant's contentions on the exact issues here before us. Such being the case, we will not quarrel with the state Court's construction of its own statutes and Con-

[1]. R.C.W. 9.19.020.

"Every person who, with intent to commit some crime therein shall, under circumstances not amounting to burglary in the first degree, enter the dwelling house of another or break and enter, or, having committed a crime therein, shall break out of, any building or part thereof, or a room or other structure wherein any property is kept for use, sale or deposit, shall be guilty of burglary in the second degree * * *".

stitution. Hebert v. Louisiana, 272 U.S. 312, 47 S.Ct. 103, 71 L.Ed. 270; Winters v. People of State of New York, 333 U.S. 507, 68 S.Ct. 665, 92 L.Ed. 840. Nothing in Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 requires a different result.

## II.

On this contention, the appellant charges that he was deprived of due process under the 14th Amendment to the Federal Constitution and Article I, Sections 3 and 7 of the Washington State Constitution, by the denial of his motion to suppress certain evidence gained by an alleged illegal search and seizure.

The trial Court very wisely framed the issues under a Pre-Trial Order and thereafter held a hearing, at which the appellant was present and testified. The trial Judge's findings, as shown in the margin [2] demonstrated beyond question that he did not believe the appellant's story.

These findings, of course, are binding on appellant and he does not argue that point. He would, however, avoid the effect of the findings by urging the invalidity of the search, even conceding the truth of the facts to which the officers testified.

Appellant argues that the facts in this case are on all fours with the facts in Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436. We disagree. In Johnson an informer told officers that he could smell burning opium in the hallway of a hotel. Federal Narcotics Officers, experienced in narcotic work, went to the scene and at once recognized a strong odor of burning opium which led them to the room of an unknown occupant. The officers made no attempt to secure a search warrant, even though Johnson, the occupant, did not know of their presence. After knocking, one of the officers identified himself and indicated he wanted to talk to Johnson. When he entered he told her he wanted to talk to her about the opium smell in the room. She denied there was such a smell. The officer then placed her under arrest and conducted the search. In Johnson the Court emphasized the fact that the occupant did not know of the presence of the officers before the entry and that there was no reason why they could not have obtained a search warrant. Here, the officers had no thought of searching the room until after the voluntary entry, at which time they saw, in plain sight, the unique stolen heater. Then appellant was placed under arrest and the search revealed the balance of the stolen goods. Unlike Johnson, the appellant, by that time, knew the officers were in hot pursuit. If they had taken

---

2. "Two police officers testified that they had the description and license number of a car that had prowled the neighborhood of the alleged burglary. They found it licensed to petitioner and called at his home. He stated that he and no one else had used the car at the time of the burglary. They then asked if they could go into his house and talk to him and he invited them in. They had no warrant of arrest or search warrant. While talking they saw a heater, one of the stolen items. They then put the petitioner under arrest and searched and found additional articles that had been taken.

"The petitioner denies the testimony of the police officers and states they forced their way into his home after he demanded they not search without a search warrant. This testimony is not accepted and I must find the officers were in fact invited into petitioner's residence.

"This case is not to determine the guilt or innocence of petitioner. It is to find whether petitioner in his trial was denied due process of law. I have concluded he was granted due process.

"Counsel for petitioner relies on United States v. Evans, D.C., 194 F.Supp. 90, as demonstrating that the evidence seized should have been suppressed. In the Evans case the trial judge on disputed testimony found the search without a warrant as unlawful and suppressed the evidence. This was a finding in the early stages of the criminal case. Here the petitioner has the burden of establishing the illegality of the seizure. While the officers were lawfully in the residence they saw an object that had been taken. They then placed petitioner under arrest. I must hold the search was incident to the arrest and there was no denial of due process in permitting that evidence to be received."

time to get a search warrant, after discovery of the stolen heater, the appellant would, without question, dispose of the stolen property or disappear or both. Ours is one of the cases, recognized in Johnson, where on balancing the need for effective law enforcement against the right of privacy, dispensation is granted from securing a warrant before search.

For that matter, there is a vast distinction between the recognition of the odor of opium in the Johnson case and the entry for the specific purpose of questioning defendant, and the subsequent recognition of stolen property, in plain view, after the entry. If a search cannot be made under these circumstances, it is difficult to envision a factual background which would permit an arrest and search without a warrant.

Recognized by both parties is the fact that the search and seizure provisions of the 4th Amendment to the Federal Constitution applies to unlawful searches and seizures by state officers. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed. 2d 1081.

Closely in point and somewhat supporting appellant's view, is the opinion of Judge Youngdahl in United States v. Evans, 194 F.Supp. 90 (D.C.D.C.1961). Evans presents a state of facts very similar to that before the Court in Johnson. For some time prior to the entry, the officers had definite information that some of the stolen property might be located in the room. In place of using this information and securing a search warrant, the officers went to appellant's apartment, and after being admitted, they observed some of the articles which were reported stolen. They then placed the appellant under arrest. While disagreeing with a number of the conclusions reached in Evans, we call attention to the language of the opinion which emphasizes the fact that the officers entered the premises with the specific intention

of making a search.[3] No such intention was shown by the evidence or found by the trial Court in this case.

We agree with the conclusion of the lower Court and that of the Supreme Court of Washington. The search and seizure here presented does not offend the provisions of our Constitution.

Finding no error, we affirm the judgment of the lower Court.

---

3. 194 F.Supp. 90, 93.
"* * * the Court should not be understood as holding that the police may never go to a home and ask to speak with a suspect about rumors of his involvement in a crime; the holding here condemns *only* their going with the intention of making a search. * * *" (Emphasis supplied)