**Albert Douglas DAVIS, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 18690.**

United States Court of Appeals
Ninth Circuit.

Jan. 17, 1964.

Harvey E. Byron and Sanford A. Warner, Los Angeles, Cal., for appellant.

Francis C. Whelan, U. S. Atty., Thomas R. Sheridan, Asst. U. S. Atty., Chief, Criminal Section, and Myron Roschko, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before BARNES and DUNIWAY, Circuit Judges and PENCE, District Judge.

PENCE, District Judge.

This is another case in which this court is called upon to determine whether or not Government officers, in their efforts aimed at suppression of crime, and the trial court, weighing the evidence before it in the light of the latest opinions of our Supreme Court, have safely crossed the quagmire [1] of "searches and seizures." We are again faced with the determination of whether or not in the trial (and subsequent conviction) of the defendant for receiving and concealing marihuana, the trial court was corrrect in denying defendant's motion to suppress, as evidence, marihuana seized by United States Customs agents at defendant's home.

In this case, about July 18, 1962, United States Customs Agents Eatmon and Greppin obtained information that a marihuana arrestee had secured his marihuana from a big marihuana dealer in the Central and Adams area of Los Angeles by the name of A. D. Davis. The officers checked criminal records of the Los Angeles Police Department and found that Albert Douglas Davis had been convicted of narcotics violations in 1954 and 1956 and had been arrested for a narcotics violation on June 30, 1962. The records disclosed that also in the month of July 1962, another arrestee had been picked up in an automobile registered to Davis. On August 25, 1962, the agents were informed by another marihuana arrestee that he had obtained the marihuana from Davis. About that time, they were also advised by a Los Angeles police officer that a reliable informant had told him Davis was to receive a large quantity of narcotics from Mexico on the following weekend, which would be the weekend of September 1 and September 2, 1962.

On September 2, 1962, the two United States Customs agents, together with Sgts. Michaelson and Beckman of the Los Angeles Police Department, all dressed in plain clothes, went to Davis' home at 636 East Adams Boulevard in Los Angeles, California, and at about 12:30 P.M.—noon time—Sgt. Beckman knocked on the door. A girl, eight year old Pamela Beal [Davis], answered the door. Sgt. Beckman said, "I would like to talk to Albert Davis", and the girl said, "Come in." Beckman, together with Agents Greppin and Eatmon, and with Sgt. Michaelson coming after, went in. Just as Eatmon stepped through the door, he observed a wastebasket in plain view about five feet from the door containing (likewise in plain view) a green leafy substance which he recognized as marihuana and which he pointed out to Sgt. Beckman. Eatmon then asked the girl if he could use the restroom; she pointed to the bathroom. While he was using the restroom he observed therein another trash container in plain view and saw a green leafy substance, marihuana, inside it.

Customs Agent Eatmon had been with the United States Bureau of Customs for three years, had participated in many marihuana investigations and was well qualified in recognizing the marihuana plant. Agent Greppin and Sgt. Michaelson also observed the "green leafy substance" in the wastebasket near the doorway, and Eatmon called Beckman's attention to the contents of the wastebasket in the bathroom. Sgt. Michaelson, together with Greppin, then went upstairs and arrested Davis (who was in bed). They then made a complete search of the bedroom and therein found marihauana in another wastebasket.

None of the officers had a warrant for the arrest of Davis or a search of the premises.

Defendant's house was of two stories. When the officers knocked on the door, defendant was in bed on the second floor, and in the downstairs portion of the house were a 17 year old brother-in-law and four or five children ranging from Pamela, age 8, down to one 6–8 months old. The mother of these children was Mary Ross, and from what was said at the time of argument before this court,

---

1. Clark, J., in Chapman v. United States, 365 U.S. 610, 622, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961).

apparently the defendant was their father. Mary Ross was in bed with the defendant at the time the officers went upstairs and both he and she were arrested, but the charges against her subsequently were dropped.

After the arrest, Agent Greppin and Sgt. Beckman took Davis to the Los Angeles Police Building where he told them he had purchased approximately 10 kilos of marihuana about two weeks before and the marihuana the officers had found was all that was left of it. He also admitted the marihuana in his home belonged solely to him.

Before trial, the defendant made a proper motion to suppress evidence and for return of the seized property. The hearing on the motion to suppress evidence was held on January 7, 1963, some four months after the arrest of the defendant. The defendant and his daughter Pamela took the stand in support of the motion. Agents Eatmon and Greppin, and Sgt. Michaelson also testified.

The testimony of the eight year old Pamela was somewhat incoherent and not too illuminating, but she did testify that when she heard the knock at the front door she opened the door and saw three men there. She knew that they had talked to her but did not remember what they had said, and she knew that they looked in the wastebasket. She did not recognize any of the above officers when asked to identify them in court.

The uncontradicted evidence of the officers was that at the time they went to defendant's residence, it was not their intention to arrest the defendant nor to search the premises. They went there for the purpose of talking to Davis, whom none of them, apparently, had ever met before. The words addressed to Pamela when the door was opened were: "I would like to talk to Albert Davis."

Eatmon testified that he had suggested to the other officers before they arrived at the house that they stop at a service station, so apparently the trial court believed that Eatmon's trip to the bathroom was necessary and not a subterfuge for conducting a quiet search of that room.

Defense has urged two grounds for reversal, both based upon the premise that the actions of the officers constituted a violation of the Fourth Amendment, and the seizure of the marihuana downstairs, as well as the arrest of Davis, and subsequent search and seizure of more marihuana in Davis' bedroom, were all unlawful:

(1) there was no probable cause for the officers to enter the premises; and (2) the officers did not have a valid consent which would authorize their entering the premises.

During argument, before this court, counsel for the defendant conceded that on the information available at the time the officers set out for the defendant's house on September 2, 1962, they did not have sufficient probable cause to secure the issuance of a warrant either for arrest of the defendant or the search of his home.

Nevertheless, the officers certainly had an abundance of information from police files, arrestees and "an informer whom the Los Angeles police had found reliable", that the defendant was trafficking in marihuana, particularly on the very weekend in question. It was not therefore, unreasonable for the officers to attempt to peaceably question the defendant about his activities in connection with marihuana—perhaps with the hope that the questioning might be as productive as it was in Tatum, Jr. v. United States, 321 F.2d 219 (9 Cir. 1963).

Absent express orders from the person in possession against any possible trespass, there is no rule of private or public conduct which makes it illegal per se, or a condemned invasion of the person's right of privacy, for anyone openly and peaceably, at high noon, to walk up the steps and knock on the front door of any man's "castle" with the honest intent of asking questions of the occupant thereof —whether the questioner be a pollster, a salesman, or an officer of the law.

The time of day, coupled with the openness of the officers' approach to defendant's doorway, rules out the possible dangers to their persons which might have resulted from a similar unannounced call in the dead of night. Cf., Miller v. United States, 357 U.S. 301, 311, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958). See Mr. Justice Jackson's concurring opinion in McDonald v. United States, 335 U. S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948). Nor do we have here the "peeping Tom" type of entry upon the premises and invasion of privacy condemned in Brock v. United States, 223 F.2d 681 (5 Cir. 1959), and by this court in California v. Hurst, 9 Cir., 325 F.2d 891 (1963).

The cases relied on by the defendant (McKnight v. United States, 87 U.S.App. D.C. 151, 183 F.2d 977 (1950); Chapman v. United States, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961); Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948); Lustig v. United States, 338 U.S. 74, 69 S.Ct. 1372, 93 L.Ed. 1819 (1949); United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950); United States v. Jeffers, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951); Jones v. United States, 357 U.S. 493, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958); Walder v. United States, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954); Lee v. United States, 98 U.S. App.D.C. 97, 232 F.2d 354 (1956)) are all cases wherein the intent of the several officers at the time of their entry on to the premises without possessing a legal warrant for search or arrest, was actually either to arrest without warrant or search without warrant, and in each case (except Rabinowitz) their "forceable" entry was made (i. e., either by physical force or by compulsion of authority) without a legal warrant for search or arrest.

The basis of appellant's contention that the officers did not have a valid consent which would authorize their entering the premises is that the child Pamela could not have given consent to the officers to enter the home. The cases which the appellant has urged in support of this contention (United States v. Linderman, 32 F.Supp. 123 (D.C.E.D.N.Y.1940); People v. Jennings, 142 Cal.App.2d 160, 298 P.2d 56; Nelson v. United States, 93 U.S.App.D.C. 14, 208 F.2d 505 (1953); United States v. Block, 202 F.Supp. 705 (D.C.S.D.N.Y.1962)), like those cited (supra) in support of appellant's first ground, are cases where the officers, without warrants, went to the premises for the purpose of search, and therein lies the difference between the factual situation in those cases and the facts accepted by the trial court as decisive in the case before us.

As indicated above, two of the officers involved, the eight year old Pamela who opened the door, and the defendant himself, testified on the motion to suppress. When the defendant was on the stand, he made no claim that Pamela's actions in opening the door or inviting the men in was in any way unusual or unauthorized, nor did Pamela testify that the opening of the door or telling the officers to come in was against the instructions of either of her parents. From all the evidence before it, the trial court was entitled to conclude then that her opening the door and invitation to enter were not unusual or unexpected or unauthorized acts. There was no evidence that the officers, in any way, suggested or requested an invitation to enter to search the house, or either by "compulsion of authority" or by physically breaking or "barging in", so much as even impliedly "forced" their way inside defendant's home.

While the right of officers to thrust themselves into a home is of grave concern, Johnson v. United States, supra, 333 U.S. at 14, 68 S.Ct. at 369, 92 L.Ed. 436, here there was no evidence of thrusting.

It is obvious from its denial of defendant's motion to suppress that the trier of the fact credited the testimony of the officers that they had gone to defendant's home solely for the purpose of talking to him—and not for the purpose or intent of entering and searching the premises

or arresting him, without a warrant. Likewise, it is certain that he believed the officers' testimony as to the manner of entry into the house and that the intent of the officers at the instant of entry was still but to attempt to talk to the defendant.

■ As this court said in Perez v. United States, 297 F.2d 648–649 (9 Cir. 1961), and reaffirmed in Maldanado v. United States, 9 Cir., 325 F.2d 295 (1963):

> "It is Hornbook law that this court cannot second-guess a trier of fact who has heard the testimony, scrutinized the witnesses, and noted their demeanor and behavior on the witness stand (Jeffries v. United States, 9 Cir. 1954, 215 F.2d 225, 226; United States v. Johnson, 1946, 327 U.S. 106, 112, 66 S.Ct. 464, 90 L.Ed. 562), and had the opportunity * * * to place his reliance on those whom *he* believes to have been telling the truth."

It was not unlawful for the officers to do as the testimony here showed: knock on the door, and when the door was opened, state, "I would like to talk to Albert Davis." When the one who opened the door said "Come in", neither the time, nor the officers' intent, nor the total circumstances, nor the Fourth Amendment demanded that they should remain outside. Cf., Keiningham v. United States, 109 U.S.App.D.C. 272, 287 F.2d 126 (1960).

■■ This case is distinguished from all of the cases referred to by appellant, by the entirely peaceful and invited entry into the home, with no search or intent to search in the minds of the officers upon entry. However, once legally inside the room, the officers were not required to remain blind to the obvious. The fact that a wastebasket containing marihuana was in their plain sight within five feet of the door at the time that they entered and that another wastebasket containing marihuana was in plain sight in the bathroom at that time was uncontradicted by the defendant when he testified on the motion to suppress. "It is well established that it is not a search to observe what is open and patent either in daylight or in artificial light. United States v. Lee, 274 U.S. 559, 47 S.Ct. 746, 71 L.Ed. 1202; Boyd v. United States, 4 Cir., 286 F. 930; Smith v. United States, 4 Cir., 2 F.2d 715; Safarik v. United States, 8 Cir., 62 F.2d 892, 895 * * *." Petteway v. United States, 261 F.2d 53, 54 (4 Cir. 1958). As was said by Judge Holtzoff in United States v. McDaniel, 154 F.Supp. 1, 2 (D.C.1957), affirmed 255 F.2d 896 (D.C.Cir., 1958) and cert. denied, 358 U.S. 853, 79 S.Ct. 82, 3 L.Ed.2d 87 (1958), Williams v. United States, 363 U.S. 849, 80 S.Ct. 626, 4 L.Ed.2d 1732 (1960), "if, without a search and without an unlawful entry into the premises, a contraband article * * * is seen in the premises, the police are not required to close their eyes and need not walk out and leave the article where they saw it."

After they had passed beyond the portal of the outer door, the officers' position here was closely akin to that described in Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963), when Diane Ker was arrested. The officers there had observed the brick-shaped package of marihuana in plain view in the kitchen, from which she had emerged, of the apartment jointly occupied by Diane and her husband George Ker, and the court said:

> "Even assuming that her presence in a small room with the contraband in a prominent position on the kitchen sink would not alone establish a reasonable ground for the officers' belief that she was in joint possession with her hubsand, that fact was accompanied by the officers' information that Ker had been using his apartment as a base of operations for his narcotics activities. Therefore, we cannot say that at the time of her arrest there were not sufficient grounds for a reasonable belief that Diane Ker, as well as her husband, was committing the offense of possession of marihuana in the pres-

ence of the officers." Id. 374 U.S. at 36–37, 83 S.Ct. at 1631–1632, 10 L.Ed.2d 726.

In the light of the information which the officers here had concerning Davis' activities in the marihuana trade, they had more than sufficient grounds for a reasonable belief that Davis was committing the offense of possession of marihuana in their presence.

We need not here concern ourselves with the state law governing arrests without warrant (Cf. United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948)), since 26 U.S.C.A. § 7607 provides that "officers of the customs * * * may * * *

> "(2) make arrests without warrant for violations of any law of the United States relating to narcotic drugs (as defined in section 4731) or marihuana (as defined in section 4761) where the violation is committed in the presence of the person making the arrest or where such person has reasonable grounds to believe that the person to be arrested has committed or is committing such violation."

■ Under the circumstances, this court, like the Supreme Court in Ker v. California, supra, cannot say that at the time the officers here arrested the defendant in his home, that there were not sufficient grounds for a reasonable belief that he was committing the offense of possession of marihuana in their presence. Defendant's arrest in his upstairs bedroom, immediately following the observance of the marihuana downstairs, was lawful, and after his arrest the search and seizure of the marihuana in defendant's bedroom was likewise lawful. Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947); United States v. Rabinowitz, supra.

■ The Supreme Court has long recognized "that standards of reasonableness under the Fourth Amendment are not susceptible of Procrustean application." Ker v. California, supra, 374 U.S. at 33, 83 S.Ct. at 1629–1630, 10 L.Ed.2d

726. Not all searches, but only unreasonable searches are proscribed by the Fourth Amendment. Whether a particular search is or is not unreasonable must be determined largely by the facts of the particular case. United States v. McDaniel, supra.

By confirming the legality of the officers' actions in this case, other law enforcement agents should not be misled into believing that the modus operandi of the officers in this case will always be believed by the trier of the fact or approved by this court. On this excursion of law enforcement officers across the quagmire of search and seizure without warrants of any kind, only a thin chain of unusual circumstances upon which beamed the most benign smile of the Goddess of Fortune has enabled them to escape safely and legally with their usually forbidden fruit.

The conviction of the defendant is affirmed.