**Allan L. ROBBINS, Warden, Maine State Prison, Respondent, Appellant,**

v.

**Kenneth MacKENZIE, Petitioner, Appellee.**

**No. 6688.**

United States Court of Appeals First Circuit.

July 11, 1966.

Certiorari Denied Oct. 17, 1966. See 87 S.Ct. 215.

---

Coffin, Circuit Judge, dissented.

John W. Benoit, Asst. Atty. Gen., with whom Richard J. Dubord, Atty. Gen., was on brief, for appellant.

Gene Carter, Bangor, Me., with whom Rudman & Rudman, Bangor, Me., was on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

## OPINION OF THE COURT.

ALDRICH, Chief Judge.

This is an appeal by respondent warden of the Maine State Prison from an order of the United States District Court for the District of Maine, granting appellee's petition for habeas corpus, and requiring, in effect, that he be given a new trial without reference to, or the use of, certain personal property seized by the Maine police. The order was based upon a determination that the police had acquired the property by an unlawful search. Petitioner has exhausted his state remedies. State v. MacKenzie, 1965, 161 Me. 123, 210 A.2d 24.

On a record which, pursuant to stipulation, consisted of transcripts of hearings in the state court along with the state court orders and opinions, the district court found the following facts. On the night of March 3, 1963 a store in Millinocket, Maine was entered, and a number of wristwatches, some gold coins and some beer stolen therefrom. At 8 o'clock on the morning of March 4 two police officers, having had a report that one Albert and another had been seen intoxicated on the street the night before, and knowing that Albert had been convicted of a similar break at the same store on an earlier occasion, sought Albert and learned that he had a room in a rooming house close to the store. They inquired of the landlady, and upon being shown which room was Albert's one stationed himself at the back door of the room, and the other, Officer Rideout, knocked on the front door. On obtaining a response that he recognized to be Albert's voice, Rideout identified himself and said that he wished to talk with him. Albert replied, "Just a minute," unlocked and opened the door, and walked back into the room. Rideout entered, and summoned the second officer. Albert was in his undershirt. Rideout asked him to come to the station for interrogation, a request which the district court found was not an arrest, and Albert started dressing. Rideout then saw a new wristwatch on his arm, the make of which was the same as one of those reported stolen. Another man, the present petitioner, was lying, apparently asleep, on another bed. Petitioner, on being spoken to, sat on the bed to put on a pair of trousers. When he started to put on a second pair he was asked whether this was his custom. Petitioner threw the trousers on the floor, and a gold coin fell out. Rideout then arrested both Albert and petitioner, searched the room, and made the seizure in question.

It is conceded that the officers had sought no warrant for arrest or for a search, and had no probable cause. Basic to the state's case is the question whether Rideout's entry into the room was freely consented to by Albert. If it was, petitioner's case falls. He concedes, as he must, that if Rideout was rightfully in the room as to Albert, he was rightfully there with respect to himself. The action of the police thereafter in noticing the watch, and the first of the coins, was not a search. It is "not a search to see what is patent and obvious either in daylight or even in artificial light." Fagundes v. United States, 1 Cir., 1965, 340 F.2d 673, 676; Davis v. United States, 9 Cir., 1964, 327 F.2d 301. What reasonably appeared to be stolen property having been displayed for their attention, the officers, if lawfully in the room, were then authorized to make an arrest, cf. Chapman v. United States, 9 Cir., 1965, 346 F.2d 383, cert. den. 382 U.S. 909, 86 S.Ct. 249, 15 L.Ed.2d 161 and, in turn, a search of the exhibited clothing. Ker v. State of California, 1963, 374 U.S. 23, 34–43, 83 S.Ct. 1623, 10 L.Ed.2d 726, cf. United States v. Rabinowitz, 1950, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653. This, too, petitioner properly does not contest.

The Maine Superior and Supreme Judicial Courts found the requisite con-

sent.[1] The district court, in its opinion, recited that petitioner not only had presented the same record, but had agreed that the Maine courts' findings should be accepted, so far as supported. Even had they not so agreed, it is apparent, from the tenor of its opinion, that this was the approach the district court wished to take. It was not inappropriate procedure, where the issues had been fully tried, so long as the state court had not "misconceived a federal constitutional right." Fay v. Noia, 1963, 372 U.S. 391, 422, 83 S.Ct. 822, 9 L.Ed.2d 837. By the same token, we will base our own decision on a determination whether the state court findings were reliably and fairly made.

Two possible questions are presented. Did the evidence warrant a finding that Albert had expressed consent to enter the room? Was a finding warranted that the consent had not been coerced?

■ The district court did not indicate doubt as to the first of these questions. When a householder, knowing the identity and purpose of his caller, opens his door and turns back inside, he expresses by his actions as adequate a consent to entry as he would by a verbal invitation. To be distinguished are cases where the householder opens a door not knowing who is there and finds himself faced with armed authority. In such cases the act of opening the door may merely be to see who is there, and turning back may only be retreating. But a policeman who identifies himself and his purpose from the other side of a closed door has every reason to assume that the act of unlocking and opening the door, without more, is a consent to talk, and that the walking back into the room is an implied invitation to conduct the talking inside.

The district court's disagreement with the state court was on the other aspect of its decision. It said,

"This court recognizes that it should not lightly upset a state court conviction. However, it is persuaded that the Maine court's holdings * * * [cannot] be reconciled with Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948) * * *" 248 F.Supp. at 499, 500. "Johnson and the above [lower court] cases compel the conclusion that Albert's permission to the officers' entry into his apartment was 'granted in submission to authority rather than as an understanding and intentional waiver of a constitutional right' * * *." Id. at 501.

In our opinion the district court read into *Johnson,* and the cases which followed it, more than is required.

In *Johnson,* police officers, confidentially informed that opium was being used at a hotel, traced the smell of burning opium to a particular room, knocked on the door, and announced their identity. When defendant opened the door, one of the officers stated, "I want to talk with you a little bit." Defendant stepped back, and allowed the officers to enter. The officers arrested the defendant and searched the room, discovering opium and smoking apparatus. In holding the search invalid, the Court pointed out that since the smell of opium coming from the room would, in all probability, have supported an application for a search warrant, and since there was no evidence that any change in the premises was imminent, this was a classic case in which the police should have proceeded by warrant. The government's contention that this was a search incident to a lawful arrest failed because the final link in the chain of probable cause was

---

1. The district court correctly pointed out that intimations in the opinion of the Supreme Judicial Court that petitioner lacked standing to complain of any lack of consent by Albert were erroneous. If the police were unlawfully in the room as to Albert, they were equally so as to petitioner. Jones v. United States, 1960, 362 U.S. 257, 265–267, 80 S.Ct. 725, 4 L.Ed.2d 697. However, this statement was advanced by the Maine court simply as an alternative ground of decision; consent was found in any event. See 161 Me. at 135–136, 210 A.2d 24.

not forged until the officers entered and found the defendant the sole occupant of the room. The Court characterized the entry as having been gained under color of authority, and not through an intentional waiver of a constitutional right.[2]

Here the police were not seeking to bypass the commissioner. They did not, as in *Johnson,* misstate their purpose in seeking entry. Rideout's object was to talk with Albert. This was a legitimate objective, which he had reason to seek. He announced it to Albert, who understood, unlocked and opened the door. Rideout told the truth; he exercised no ruse; he threatened no force. After entry he made no attempt to engage in a search. We do not think that after a householder, who has been fully and honestly informed of the objectives of the police, makes a responsive gesture of invitation, the courts must engage in a psychological or physiological inquiry into whether the invitation was really meant. An ordinary person who knocks on a door and receives assent may properly consider himself an invited guest, and would be so considered by the courts; the householder would not be permitted to base a claim of trespass upon the assertion that in his heart he did not wish to admit his caller. Similarly, the fourth amendment, while it requires that a policeman seeking admittance to a private residence must fully regard the rights of the householder, does not require him to be clairvoyant.

Officer Rideout's conduct in this case was entirely respectful of Albert's rights. We would agree with the holding in *Johnson* that where the officer's real objective is search and seizure the householder's consent should not only be clearly voluntary, but also specifically directed toward search and not merely toward entry. Cf. Reed v. Rhay, 9 Cir., 1963, 323 F.2d 498, 500–501, cert. den. 377 U.S. 917, 84 S.Ct. 1184, 12 L.Ed.2d 187. We agree also with cases holding that courts should be skeptical of a purported consent to a search made after the officer had been admitted. Catalanotte v. United States, 6 Cir., 1953, 208 F.2d 264; United States v. Smith, 2 Cir., 1962, 308 F.2d 657, 663–664, cert. den. 372 U.S. 906, 83 S.Ct. 717, 9 L.Ed.2d 716. Acquiescence in such a case may well be mere "bravado," Pekar v. United States, 5 Cir., 1963, 315 F.2d 319, 324–325, or may be granted in the belief that by now there is no choice. But even as to searches we have never understood the law to be that there cannot be consent, or that, if the consent is the result of a police request, there has been as a matter of law a voiding duress. See, e. g., Burke v. United States, 1 Cir., 1964, 328 F.2d 399, cert. den. 379 U.S. 849, 85 S. Ct. 91, 13 L.Ed.2d 52; Rees v. Peyton, 4 Cir., 1965, 341 F.2d 859; Simmons v. Bomar, 6 Cir., 1965, 349 F.2d 365; Burnside v. State of Nebraska, 8 Cir., 1965, 346 F.2d 88. At least pre-Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (6/13/66), we will not hold that as a matter of law a policeman must introduce a noncustody request to talk by an explanation that one need not respond if one wishes not to.

Finally, we believe that the district court misconstrued the Superior Court's findings, or inferences, as to Albert's motivation in opening the door. The Superior Court found that "Albert's will was [not] overcome by fear of authority * * *." It added that it believed that Albert "realized that there was nothing to be gained by denying the officers entrance and that he might as well let them in to find the stolen goods,

---

2. The Court of Appeals opinion, 9 Cir., 1947, 162 F.2d 562, discussed only probable cause and the need for a warrant; it did not pass on the voluntariness of the entry. The authority of *Johnson* has been questioned, United States v. Rabinowitz, supra, 339 U.S., at 85, 70 S.Ct. 430 (Frankfurter, J., dissenting), but it now seems to be established precedent for the strong preference accorded police action under warrant. United States v. Ventresca, 1965, 380 U.S. 102, 106–107, 85 S.Ct. 741, 13 L.Ed.2d 684; Chapman v. United States, 1961, 365 U.S. 610, 614–616, 81 S.Ct. 776, 5 L.Ed.2d 828.

the discovery of which now appeared inevitable anyway." The district court interpreted this latter finding as contradicting the court's initial conclusion, because, in the district court's opinion, it meant that "Albert was acceding to an entry which he believed he was powerless to prevent, rather than freely and intelligently waiving a known constitutional right." We believe the Superior Court was not contradicting itself in two contiguous sentences. Our interpretation of its second sentence is much simpler. It is that the court believed that Albert had concluded that events had caught up with him, and that if he refused entry he would merely be postponing the inevitable. Cf. Gatterdam v. United States, 6 Cir., 1925, 5 F.2d 673, 674 ("You might as well consent, because, if you do not, we will go and get a search warrant," held not coercion.) Bowing to events, even if one is not happy about them, is not the same thing as being coerced. If it were, every plea of guilty would be involuntary.

Judgment will be entered reversing the judgment of the District Court and ordering the writ discharged.

COFFIN, Circuit Judge (dissenting).

I am unable to concur in the court's opinion. In my view it does not measure the facts by the rigorous standard required; goes beyond precedent in construing consent from ambiguous conduct; and establishes a novel and unworkable double level of Fourth Amendment rights.

When entry into a person's premises by officers of the law not having a warrant is sought to be justified by that person's consent, the applicable standard is a rigorous one. A "[c]onsent to a search, in order to be voluntary, must be unequivocal, specific and intelligently given, uncontaminated by any duress or coercion, and is not lightly to be inferred." [1]

Simmons v. Bomar, 6 Cir., 1965, 349 F.2d 365, 366. There must be "clear and positive" evidence of such consent. United States v: Smith, 2 Cir., 1962, 308 F.2d 657, 663, cert. denied, 372 U.S. 906, 83 S. Ct. 717. There is a burden on the government to show "clearly" that consent was "freely and intelligently" given. Kovach v. United States, 6 Cir., 1931, 53 F.2d 639.

In assessing the voluntariness of consent, the coercive effect of an unexpected confrontation with an officer of the law must be carefully weighed. In United States v. Smith, supra, 308 F.2d at 663, the court said, "When a law enforcement officer knocks at the door, identifies himself, and asks to be allowed to search the premises, the acquiescence thus obtained is generally not considered to be voluntary consent". In Judd v. United States, 1951, 89 U.S.App.D.C. 64, 190 F.2d 649, 651, the court said, "Nonresistance to the orders or suggestions of the police is not infrequent * * *; true consent, free of fear or pressure, is not so readily to be found". See also Lee v. United States, 1956, 98 U.S.App.D.C. 97, 232 F.2d 354, 355; Higgins v. United States, 1954, 93 U.S.App.D.C. 340, 209 F.2d 819, 820.

In the case before us, the officers came to the rooming house shortly after 8 a. m. The night before, Albert had drunk six or seven large and small bottles of beer, had gone to bed after 2 a. m., and, when the officer knocked, did not think he was "still drunk" but was "just sick from drinking". Officer Rideout testified at the hearing on defendant's motion to suppress evidence as, follows:

"Q. Did he [Albert] ever invite you to come into the room?

"A. He opened the door and turned around and walked away * * *. When I knocked on the door I identified myself and told him I would like

---

1. Cf. Johnson v. Zerbst, 1937, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, "It has been pointed out that 'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights and that we 'do not presume acquiescence in the loss of fundamental rights.' A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. * * * *"

to talk with him. If Mr. Albert had not wanted to invite me into his room or to talk with [sic] all he had to do was say so and keep the door locked. When unlocking the door I took that as an invitation that he would talk with me. The invitation extended to the room because he turned and walked back into it."

Officer Rideout at another point stated that he was admitted by Albert and "shown the courtesy of looking about the room. * * *"

Albert called by the state as a witness, described his attitude at the moment of entry as follows:

"Q. Did you want him to come in?

"A. No (laughing).

"Q. Why didn't you object to his coming in?

"A. It's pretty hard.

"Q. Was it because he was a police officer?

"A. That's right."

He was clad in shorts and T-shirt. A conference in the corridor might well not have seemed a reasonable alternative to him.

From this record (together with the facts reported in the opinion of the court) my brethren are satisfied that the government has sustained its burden of proving by clear and positive evidence that consent to entry was unequivocal, specific and intelligently given, free of fear or pressure. I think that such a conclusion is unwarranted by both the facts of this case and the sizeable number of relevant decided cases.

Putting aside for the moment Johnson v. United States, 1948, 333 U.S. 10, 68 S.Ct. 367, a survey of cases from lower federal courts indicates a lengthy tradition—before and after *Johnson*—of reluctance to infer consent, under even more positive evidence than that in the case at bar. The cases where entry has

been made and consent claimed are of three kinds: those where the entry was "to talk"; those where search was desired without prior arrest; and those where search followed arrest.

Of the "entry to talk" cases, Pekar v. United States, 5 Cir., 1963, 315 F.2d 319, is perhaps closest to the facts of the present case. The defendant was suspected of stealing luggage from an air terminal. FBI agents, finding that a person meeting their description was in a certain hotel room, knocked on the door, said they wanted to talk about an FBI investigation, waited ten minutes, repeated their request, and showed their identification cards through the louvers of an outer door. Defendant finally opened the door, the agents entered, observed the purloined luggage, and asked if defendant minded their looking around. The court reversed the lower court, saying that defendant was "impliedly coerced" and that "the agents' superior position to that of the 'confused' defendant was the motivating force behind defendant's opening of the door and allowing the agents to 'look around' once they were inside." 315 F.2d at 325.

In Higgins v. United States, supra, 209 F.2d at 820, a police officer identified himself to defendant and asked to talk with defendant in his room. The officer testified that defendant said "that that was all right and asked me to accompany him to his room. * * * I asked him then if I could look around. He stated that I could * * *." The court held that, despite this direct verbal evidence of acquiescence, there was no real voluntary consent.[2]

The acquiescence of a defendant to the suggestion of a narcotics agent, "Let's go up to your room and talk" was held to fall short of an understanding and intentional waiver of a constitutional right. United States v. Como, 2 Cir., 1965, 340 F.2d 891.

2. In this case, as in others, it is perhaps arguable that the purpose of entry was not simply to talk but to "look around" and search. This very observation underscores the difficulty of making the required specificity of consent depend on the purpose of the requesting officer. Any officer gaining access to a room or home of a suspect must also expect to use his eyes.

In "entry to talk" cases where consent was found to have been given, the findings rested on, apparently, direct and unambiguous verbal invitations. In Davis v. United States, 9 Cir., 1964, 327 F.2d 301, where entry was held lawful, the officer had sought admission "at high noon" and had been specifically invited in by an eight year old girl, whose authority to say "come in" was found "not unusual, or unexpected or unauthorized". In Reed v. Rhay, 9 Cir., 1963, 323 F.2d 498, 500 n. 2, the officers asked defendant if they could go into his house and talk with him "and he invited them in".

In the cases involving request to search without pre-existing arrest, there is substantial authority declaring that requisite consent was lacking even though the defendant has said "All right", "Come in", or words to that effect. Catalanotte v. United States, 6 Cir., 1953, 208 F.2d 264; United States v. Marra, W.D.N.Y., 1930, 40 F.2d 271; United States v. Evans, D.D.C., 1961, 194 F.Supp. 90; United States v. Slusser, S.D.Ohio, 1921, 270 F. 818; United States v. Marquette, N.D.Cal., 1920, 271 F. 120.

Cases in this category (request to search without pre-existing arrest) where consent was held to have been given are those where it was clearly given, where the fact of consent was assumed, or where the holding today might be successfully challenged. In Rees v. Peyton, 4 Cir., 1965, 341 F.2d 859, one co-owner of the premises signed a written consent and the other orally approved entry by the police. In three cases the court assumed consent had been given without describing the factual situation. Carson v. United States, 5 Cir., 1964, 332 F.2d 784, cert. denied, 379 U.S. 835, 85 S.Ct. 69, 13 L.Ed.2d 43; Simmons v. Bomar, supra; Chapman v. United States, 9 Cir., 1965, 346 F.2d 383. And in Gatterdam v. United States, 6 Cir., 1925, 5 F.2d 673, cited by the majority, the court construed as consent the following language: "If I do not consent, you will go and get a search warrant, and you might as well search now." That such a holding would be followed in that circuit 41 years later is doubtful in view of Catalanotte v. United States, supra.

As for searches made after arrest, several cases bear witness to the caution exercised by courts in construing even words of positive permission as true consent. United States v. Smith, supra; Channell v. United States, 9 Cir., 1960, 285 F.2d 217; Judd v. United States, supra; United States v. Gregory, S.D. N.Y., 1962, 204 F.Supp. 884. In Burnside v. State of Nebraska, 8 Cir., 1965, 346 F.2d 88, consent was clearly proven by the urgent request of defendant that police visit his home because of his concern over his wife's suicidal tendencies.

In Lee v. United States, supra, officers visited defendant's apartment. There were differences in testimony about whether the door was open, but the officers did not use force. The court said, "In any event, although they did not use force, they carried with them such compulsion of authority that the subsequent search cannot be said to have been with the acquiescence of Lee." 232 F.2d 355. This is the only case (other than Johnson v. United States, supra) involving attempted proof of consent other than through words, oral or written, that has come to my attention.

In short, I can only regard the holding of the court in this case—that, after an officer knocks, identifies himself, and announces his purpose, "the act of unlocking and opening the door, without more, is a consent to talk, and that the walking back into the room is an implied invitation to conduct the talking inside"—as going beyond all of the cases which have come to my attention.

Apart from the authorities, there are two other difficulties I find in the court's opinion. Both difficulties are presented by the court's efforts to distinguish Johnson v. United States, supra. The opinion seems to take two approaches. In its first discussion of *Johnson*, it characterizes the case as "a classic case in which the police should have proceeded by warrant". If *Johnson* were to apply only

when there is time and basis for obtaining a warrant, clearer manifestation of consent to entry would be required when officers had probable cause than when they did not have it. Under such guidelines, officers would be sorely tempted to suppress their independent evidence and claim entry only for the purpose of talking with a suspect.

The court's opinion also seeks to limit *Johnson* to cases "where the officer's real objective is search and seizure". In such cases, my brethren agree that "the householder's consent should not only be clearly voluntary, but also specifically directed toward search and not merely toward entry". The corollary of this proposition is that if the officer's "real" objective is merely to enter to talk, somewhat less unequivocal and clear consent suffices to waive one's constitutional right. This, it seems to me, is an unacceptable and unworkable doctrine. In effect it establishes a bifocal view of Fourth Amendment rights.

Such a view, it seems to me, is unworkable because, to borrow my brethren's word, it would require the courts to be "clairvoyant" in assessing the motives of the officer. It is unacceptable because, under the court's view of the law, an officer, announcing his purpose as "to talk", could gain entry into a house, apartment, or room on the basis of equivocal or ambiguous conduct prompted in large part by the instinct to submit to authority. Once inside, after preliminary conversation, any officer worth his salt would put the inevitable question, "Do you mind if I look around?" With not only the camel's nose but the camel himself in the tent, any real freedom of choice would be an illusion. The caveat of the majority that courts should be "skeptical" of purported consent under such circumstances is a frail substitute for the threshold requirement of unequivocal, specific, and intelligently given consent.

In short, I look upon a categorization of consent linked to avowed purposes of entry as an erosion of the Fourth Amendment. It does not read, "The right of the people to be secure in their \* \* \* houses \* \* \* against unreasonable searches except for the entry of officers who wish merely to talk."

The very legitimate question remains: what is the police officer to do in such a situation as Officer Rideout faced? Where actions are ambiguous, I suggest that at least a verbal request to enter should be made. A knock on the door and a police identification are all too easily translated into "Open in the name of the law". A request to enter might very well not change the result in most cases. But it is a signal that there is still a choice to be made and rights to be respected.[3] This would not seem too

---

3. My suggestion does not go so far as to include a statement that the householder has the right not to consent. It merely sets the stage for a clear response to a specific request to enter on premises. That *at least* a specific request to enter should be made where voluntary consent is sought to be drawn from ambiguous actions seems to follow *a fortiori* from the language of the Supreme Court in Miranda v. Arizona, 384 U.S. 436, 86 S.. Ct. 1602 (6/13/66), where the Court, in spelling out the rationale for a warning to an in-custody suspect of his right to remain silent, said: "For those unaware of the privilege, the warning is needed simply to make them aware of it —the threshold requirement for an intelligent decision as to its exercise. More important, such a warning is an absolute prerequisite in overcoming the inherent pressures of the interrogation atmosphere." In this case, the pressures were those created by the appearance of the officer at the doorway, as Albert testified. The analysis is equally applicable.

In so citing *Miranda*, I do so with full recognition that the Court was speaking of another constitutional right in an opinion which is not retrospective. Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882, (6/20/66).

But, since, in my view, this court is articulating clearly a new rule covering non-verbal acts in response to a knock on the door and an officer's announced purpose to talk, I deem *Miranda's* reasoning relevant in corroborating the traditional requirements of specificity and clarity in waiving the Fourth Amendment right.

much of a burden to impose on the police and would at least insure the presence of some unequivocal evidence of consent.

So, while the court concludes that, after a policeman knocks, identifies himself, and states his purpose, the "act of unlocking and opening the door, without more, is a consent to talk, and \* \* \* the walking back into the room is an implied invitation to conduct the talking inside", I would have us hold on the facts of this case that there was not enough clear evidence of "an affirmative response", unequivocal, intelligently given, and free of duress, to make the entry lawful.