**Joey Lee POE, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2005–CA–000698–MR.

Court of Appeals of Kentucky.

Aug. 11, 2006.

J. Brandon Pigg, Frankfort, KY, for Appellant.

Gregory D. Stumbo, Attorney General, Louis F. Mathias, Jr., Assistant Attorney General, Frankfort, KY, for Appellee.

Before JOHNSON and TAYLOR, Judges; BUCKINGHAM,[1] Senior Judge.

## OPINION

JOHNSON, Judge.

Joey Lee Poe has appealed from the final judgment and sentence of the Bracken Circuit Court entered on March 8, 2005, which sentenced him to five years' imprisonment following a jury verdict convicting him of criminal mischief in the first degree[2] and disorderly conduct.[3] Having concluded that the police officers had reason to detain and to question Poe, and that Poe was not entitled to a directed verdict of acquittal based on the evidence as a whole, we affirm.

On May 14, 2004, Poe was indicted by a Bracken County grand jury for criminal mischief in the first degree[4] and for being a PFO II.[5] At a jury trial held on November 5, 2004, the Commonwealth presented testimony[6] from Trooper Gerald Fieger, Jr., with the Kentucky State Police, who testified to the following events: On March 29, 2004, at approximately 10:05 p.m., Trooper Fieger, along with KSP Trooper John Combs and Bracken County Deputy Sheriff Justin Pickerell, responded to a 911 call alleging domestic violence at the residence of Joey and Bonnie Poe located at 450 Delaney Road, Brooksville, Bracken County, Kentucky. The 911 call had been placed by Bonnie's aunt, Linda Fagen, who reported that while she was talking to Bonnie on the telephone, Poe had come home, was cursing at Bonnie, and then the phone line went dead.[7]

When the officers arrived at the residence, it was raining heavily. Bonnie answered the door and told the officers that she and Poe had argued because Poe had been drinking and that following the argument Poe had left the house on foot. Bonnie gave consent to the officers to search inside the residence for Poe, but they did not locate him. The officers then proceeded to search for Poe outside the residence, and Deputy Pickerell located Poe in an

1. Senior Judge David C. Buckingham sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

2. KRS 512.020.

3. KRS 525.060.

4. The indictment states that "when having no[ ] right to do so or any reasonable ground to believe he had such right, he intentionally or wantonly defaced, destroyed or damaged property of the Kentucky State Police causing a pecuniary loss of $1000.00 or more." The amount stated of record is $1,334.72.

5. KRS 532.080(2). On August 12, 2004, Poe filed a motion in open court to join several misdemeanor charges from the Bracken District Court with his circuit court indictment, including disorderly conduct, alcohol intoxication, KRS 222.202(1), and menacing, KRS 508.050, since all the charges arose from the same incident. The trial court granted the motion on that date.

6. The Commonwealth presented other witness, including Billy Moore, Jr., Fleet Safety Manager for the Kentucky State Police, and Roy Tucker, an auto repairman, who both testified to the damage to the cruiser, and that its repair exceeded $1,000.00. Justin Pickerell, a former Bracken County Deputy Sheriff, also testified as to the response to the domestic violence call.

7. Bonnie testified that Poe did not curse at her during their argument and that she hung up on her aunt because "[the argument] was none of her business."

abandoned vehicle located at the back of the property.

Poe was in the passenger seat of the vehicle and was accompanied by a large dog. Poe appeared to be either asleep or passed out. As the officers approached the vehicle, the dog began to bark. The officers knocked on the window of the vehicle and asked Poe to step outside, but Poe refused. The officers repeatedly asked Poe to step outside of the vehicle, but instead Poe reached down under the seat. Because the officers thought Poe was reaching for a weapon, they drew their guns and ordered Poe to put his hands up and to exit the vehicle. Poe started to exit the vehicle with the dog, but the officers warned Poe to leave the dog in the vehicle or it would be shot.[8] The officers removed Poe from the vehicle, searched his person, and placed him in handcuffs. However, Poe was told that he was not under arrest.

Poe was taken around the front of the house where he was placed in the backseat of Trooper Fieger's police cruiser. The officers began to question Poe and attempted to explain why they were at the residence, but Poe was very intoxicated and very belligerent, and he threatened the officers because they would not allow him to get his dog out of the vehicle. Poe continued cursing and was uncooperative with the officers. He began to bang his head on the metal screen that separated the front seat and the backseat of the police cruiser. Because he continued to be uncooperative, Trooper Fieger told Poe he was under arrest.

Trooper Fieger left the Poes' property with Poe in the backseat of the police cruiser. However, Poe continued to bang his head on the metal screen inside the car and on the side glass window. Trooper Fieger stopped the car to restrain Poe, but Poe kicked the glass out of the side window, breaking the window molding and knocking out a portion of a smaller window. Trooper Fieger then sprayed Poe in the face with pepper spray and he and Trooper Combs wrestled Poe out of the car and to the ground.[9] Poe's legs were restrained and he was placed back inside the police cruiser.[10]

As Trooper Fieger drove toward the police station, Poe attempted to crawl out of the moving vehicle through the broken window. Trooper Fieger stopped the car and put a seatbelt on Poe to prevent him from escaping. Once they arrived at the police station, Poe continued to curse at the officers, and also threatened Trooper Fieger's life.

At the close of the Commonwealth's case, Poe moved for a directed verdict of acquittal on all the charges. He argued that the Commonwealth had failed to prove the essential elements of alcohol intoxication and disorderly conduct and that all other charges should be dismissed "because of the illegal actions of the police in placing [him] in conditions tantamount to arrest without probable cause." The trial court granted a directed verdict on the misdemeanor charge of alcohol intoxication, but denied the motion as to the remaining charges.

Poe claimed he had done nothing to justify his arrest and presented three wit-

---

8. Bonnie testified that the dog is a Rotweiller. The Commonwealth states in its brief that the police officers "recognized the dog as a potential weapon."

9. Bonnie testified that she saw Poe being sprayed with the pepper spray before the po-

lice left the scene and before Poe kicked out the vehicle's window.

10. At this time, Trooper Fieger took photographs of the damage to the police cruiser.

nesses in his defense. He renewed his motion for a directed verdict on all charges, but the motion was denied. The jury found Poe guilty of criminal mischief in the first degree and disorderly conduct, but found him not guilty of menacing. Poe then pled guilty to being a PFO II rather than have the jury determine his sentence, and the Commonwealth agreed to recommend a sentence of five years' imprisonment on criminal mischief in the first degree, enhanced to five years' imprisonment for the PFO II conviction, and 12 months [11] in jail for disorderly conduct, all to run concurrently for a total of five years.[12] The trial order and jury verdict was dated November 10, 2004, and entered on November 15, 2004.

On November 15, 2004, Poe filed a motion for a new trial, or in the alternative, a motion for judgment notwithstanding the verdict. The Commonwealth filed its objections on February 10, 2005. The trial court denied Poe's motion on February 22, 2005. Poe was sentenced to five years in prison on March 8, 2005.[13] On March 29, 2005, the trial court entered an order amending the March 8, 2005, final judgment and sentence to reflect the correct disposition of the alcohol intoxication and menacing charges. This appeal followed.

In his argument to this Court, Poe claims the trial court erred when it denied his motion for a directed verdict of acquittal, causing substantial prejudice to him in violation of his rights under the Fifth and Fourteenth Amendments to the United States Constitution and Sections Two and Eleven of the Kentucky Constitution. Specifically, Poe contends that he was

placed under arrest without probable cause when he was handcuffed and put in the backseat of the police cruiser and that he exercised his right to resist an illegal arrest. Having concluded that Poe was not under arrest at the time he was initially handcuffed and placed in the police cruiser, we affirm the trial court's denial of his motions for directed verdict based on improper arrest. Since Poe was not arrested at that point, his other two arguments that the police lacked probable cause to arrest him and that his actions were the result of rightfully resisting an unlawful arrest are baseless.

In *Commonwealth v. Benham*,[14] our Supreme Court restated the rule as applied to a motion for a directed verdict of acquittal as follows:

> On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.

In our review of the denial of a directed verdict, we are to determine "if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, [if so] then the defendant is entitled to a directed verdict of acquittal" [citation omitted].[15]

---

11. Poe agreed to 90 days, but the trial court sentenced him to 12 months.

12. Poe reserved the right to appeal the underlying convictions.

13. The pre-sentence investigation report was filed on January 27, 2005. Poe was given credit for time served of 116 days.

14. 816 S.W.2d 186, 187 (Ky.1991).

15. *Benham,* 816 S.W.2d at 187.

"Credibility and weight of the evidence are matters within the exclusive province of the jury" [citations omitted].[16]

In this case, the jury heard conflicting testimony from Bonnie and the police officers, Trooper Fieger and Deputy Pickerell. In viewing the evidence in a light most favorable to the Commonwealth, the trial court found it was for the jury to determine whether the officers in performing their duty to investigate a domestic violence report employed more force at any time than was reasonably necessary to investigate the incident, thus changing the detention of Poe from an investigatory stop to an arrest.

■ In determining whether Poe's constitutional rights were violated in this case, we first note that the police officers had a legal right to be on the premises as they were there for a legitimate purpose.[17] It is undisputed that the police officers arrived at the Poe residence in response to a 911 call of domestic violence. Once at the residence, under KRS 403.785,[18] the officers had a duty to use all reasonable means to prevent any further domestic violence. In carrying out this duty, it was certainly reasonable for the officers to remain at the location as long as they suspected there was a danger to the physical safety of individuals present.

■ Regardless of Bonnie's testimony to the contrary, there was ample evidence of record, including Bonnie's own testimony, to indicate that the potential for domestic violence existed that evening at the Poes' home. Then, after locating Poe, the police acted reasonably in asking him to step out of the abandoned vehicle so they could determine whether he was a threat to anyone. His repeated refusals to cooperate, his reaching under the seat, and his desire to let loose his dog caused the officers to remove him forcibly from the vehicle. At this point, the facts showed that Poe had been uncooperative and agitated, and, thus, it was reasonable for the police to restrain him for their own safety while they discussed with him the potential for domestic violence. Accordingly, the police officers' handcuffing Poe and putting him in the cruiser out of the pouring rain was reasonable in light of the circumstances.

It is important that a police officer be able to contain potentially dangerous situations in a short period of time, using the least intrusive means to verify or to dispel their suspicions.[19] At the point when Poe was handcuffed and placed in the police cruiser, the officers had been unable to get the whole story as to the events that led up to their visit to the Poes' residence that evening. The restraint used by the officers was no more than that necessary to protect the safety of Poe, others, and themselves, while attempting to obtain the necessary information.

---

16. *Commonwealth v. Smith,* 5 S.W.3d 126, 129 (Ky.1999). *See also Young v. Commonwealth,* 50 S.W.3d 148, 165 (Ky.2001); and *Commonwealth v. Suttles,* 80 S.W.3d 424, 426 (Ky.2002).

17. *See Davis v. United States,* 327 F.2d 301, 303 (9th Cir.1964).

18. KRS 403.785(2) states as follows:

When a law enforcement officer has reason to suspect that a family member ... has been the victim of domestic violence and abuse, the officer shall use all reasonable means to prevent further abuse, including but not limited to:

(a) Remaining at the location of the domestic violence and abuse so long as the officer reasonably suspects there is danger to the physical safety of individuals present without the presence of a law enforcement officer[.]

19. *Houston v. Clark County Sheriff Deputy John Does 1–5,* 174 F.3d 809, 815 (6th Cir. 1999).

Finally, we must determine whether Poe was arrested at the point when the officers handcuffed him and placed him in the police cruiser. We agree with the Commonwealth that these actions by the officers were the result of Poe's prohibiting them from carrying out their duty under KRS 403.785, not an attempt to place him under arrest. Poe's attempt at equating his brief detention to a custodial arrest is not convincing.

Pursuant to *United States v. Hensley*,[20] a police officer may conduct an investigatory stop if he has a particularized and objective basis for suspecting the particular individual being stopped is, or is about to be, engaged in criminal activity or is wanted for past criminal conduct. In considering whether a reasonable suspicion exists, the totality of the circumstances must be taken into account.[21] A "reasonable suspicion" is less demanding than "probable cause" and requires considerably less proof than proof of wrongdoing by a preponderance of the evidence.[22] In determining whether an investigatory stop has crossed the line to an arrest, we must consider the totality of the circumstances.[23]

Thus, we hold that the conduct by the officers in restraining Poe prior to Poe's damaging the cruiser did not rise to the level of an arrest. Accordingly, we will not discuss whether Poe's subsequent actions of threatening Bonnie and the officers, kicking and damaging the police cruiser, and attempting to escape were reasonable in his resisting what he claims was an unlawful arrest.

For the foregoing reasons, the judgment of the Bracken Circuit Court is affirmed.

ALL CONCUR.

---

20. 469 U.S. 221, 227, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985).

21. *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).

22. *United States v. Richardson*, 949 F.2d 851, 857–58 (6th Cir.1991). *See also United States v. Arvizu*, 534 U.S. 266, 273–74, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002) (stating that "[t]his process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person'" [citations omitted]); and *Alabama v. White*, 496 U.S. 325, 329–30, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990).

23. *Houston*, 174 F.3d at 814–15; *United States v. Foster*, 376 F.3d 577, 587–88 (6th Cir.2004).