[Cite as *State v. Seagle*, 2012-Ohio-132.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## UNION COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,           CASE NO. 14-11-16

      v.

DARREN A. SEAGLE,              O P I N I O N

      DEFENDANT-APPELLANT.

STATE OF OHIO,

      PLAINTIFF-APPELLEE,            CASE NO. 14-11-17

      v.

DARREN A. SEAGLE,              O P I N I O N

      DEFENDANT-APPELLANT.

**Appeals from Marysville Municipal Court**
**Trial Court Nos. CRB 1100326 and CRB110327**

**Judgments Affirmed**

**Date of Decision: January 17, 2012**

**APPEARANCES:**

*Darrell L. Heckman* **for Appellant**

*Tim Aslaner* **for Appellee**

**PRESTON, J.**

**{¶1}** Defendant-appellant, Darren A. Seagle (hereinafter "Seagle"), appeals the Marysville Municipal Court's decision denying his motion to suppress evidence and the judgment entries of conviction that followed thereafter. We affirm.

**{¶2}** Around 4:00 a.m. on May 10, 2011, Seagle reported a domestic violence incident that occurred between him and his live-in girlfriend, Amber Lawson (hereinafter "Lawson"), to the Marysville Police Department. (Aug. 2, 2011 Tr. at 5-11, 25). Seagle invited law enforcement officers into his home to investigate the matter. (*Id*. at 9-10). When officers entered Lawson's bedroom to question her about the incident, they discovered marijuana, rolling papers, and a marijuana roach lying on top of the bedroom dresser. (*Id*. at 11-13). When the officers asked Lawson about the items, Lawson stated that they belonged to

Seagle, and that she would take a drug test to prove they did not belong to her. (*Id.* at 13).

{¶3} On May 10, 2011, Seagle was separately charged with possession of drug paraphernalia in violation of R.C. 2925.14(C)(1), a fourth degree misdemeanor and possession of marijuana in violation of R.C. 2925.11(C)(3)(a), a minor misdemeanor. (Doc. Nos. 2, 2). The former charge was assigned case no. CRB 1100326; the latter charge was assigned case no. CRB 1100327.

{¶4} On May 16, 2011, Seagle filed a written plea of not guilty in both cases. (Doc. No. 6). On May 19, 2011, Seagle filed a motion to suppress evidence seized during the May 10th incident. (Doc. No. 7).

{¶5} On August 2, 2011, the trial court held a hearing on the motion and overruled the motion at the conclusion of the hearing. (Doc. Nos. 7, 16). Immediately thereafter, Seagle entered no contest pleas to both charges, and the trial court found Seagle guilty on both charges. (*Id.*). On the possession of drug paraphernalia (case no. CRB 1100326), the trial court sentenced Seagle to 30 days in jail but suspended the 30 days of jail upon the condition that Seagle successfully complete one year of community control. (Doc. No. 15); (Aug. 2, 2011 Tr. at 36-37). The trial court also imposed a $250 fine, ordered that Seagle pay $110 in court costs, and imposed a 180-day license suspension. (*Id.*); (*Id.*). On the possession of marijuana (case no. CRB 1100327), the trial court ordered Seagle to

pay a $150 fine and $28 in court costs, and the trial court also imposed a 180-day license suspension. (Doc. No. 7); (Aug. 2, 2011 Tr. at 36-37). Upon Seagle's request, the sentences in both cases were stayed pending appeal. (Doc. Nos. 8, 17); (Aug. 2, 2011 Tr. at 37).

{¶6} On August 15 and 19, 2011, Seagle filed notices of appeal. (Doc. Nos. 10, 18). The appeal in case no. CRB 1100326 was assigned appellate case no. 14-11-16; the appeal in case no. CRB 1100327 was assigned appellate case no. 14-11-17. On October 13, 2011, this Court consolidated the cases for purposes of appeal.[1]

{¶7} Seagle now appeals, raising one assignment of error for both cases.

## ASSIGNMENT OF ERROR

**THE TRIAL COURT ERRED IN OVERRULING DEFENDANT-APPELLANT'S MOTION TO SUPPRESS.**

{¶8} In his sole assignment of error, Seagle argues that the trial court erred by denying his motion to suppress evidence because law enforcement entered Lawson's room without her permission; and therefore, exceeded the scope of the consent search authorized by Seagle. The City, on the other hand, argues that the drugs and drug paraphernalia was not obtained as a result of a search of

---

[1] Upon review of the record, it is apparent that the two charges were filed by the clerk of the trial court on the same date and at the same time. Pursuant to the Rules of Superintendence, the charges should have been assigned a single case number, 2011 CRB ___, with suffixes A and B to designate the separate charges. Had the case number been properly assigned, the appellant would have only been required to file one notice of appeal, pay one court cost deposit, and only one case on appeal would have resulted.

defendant's home; but rather, were found in plain view upon the officer's investigation of the alleged domestic violence incident.

{¶9} A review of the denial of a motion to suppress involves mixed questions of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶8, citing *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992). At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to evaluate the evidence and the credibility of witnesses. *Id*. When reviewing a ruling on a motion to suppress, deference is given to the trial court's findings of fact so long as they are supported by competent, credible evidence. *Id*. With respect to the trial court's conclusions of law, however, our standard of review is de novo, and we must decide whether the facts satisfy the applicable legal standard. *State v. McNamara*, 124 Ohio App.3d 706, 710, 707 N.E.2d 539 (1997).

{¶10} John Murray, a patrolman with the City of Marysville Police Department, testified that he was dispatched to 1251 Collingwood Court around 4:00 a.m. on May 10, 2011 to investigate a domestic violence report. (Aug. 2, 2011 Tr. at 5, 7). Murray testified that, when he and his partner, Officer Collier, arrived, they spoke with Seagle, and Seagle indicated that his girlfriend and he had an argument and she tried to pry his bedroom door open. (*Id*. at 8-9). According to Murray, Seagle took Officer Collier and him into the house and showed them

the marks on his bedroom door. (*Id*. at 9). Murray testified that, after Seagle showed them the marks on his bedroom door, Officer Collier and he "spoke to [Seagle's] girlfriend who [was] laying on the bed in the room adjacent to his door." (*Id*.).[2] Murray testified that the door to the bedroom of Seagle's girlfriend, Amber Lawson, "was open and [Lawson] was laying on the bed there." (*Id*. at 11). Murray further testified that there were lights on in the house and a light on in Lawson's bedroom when he walked into Lawson's bedroom and began talking to her about the alleged incident of domestic violence. (*Id*.). According to Murray, there was a dresser "just as you walk in the door" of Lawson's bedroom, and "[t]here were drugs and paraphernalia laying directly on top of that dresser as soon as you walked in the door." (*Id*. at 11-12). Murray identified State's exhibit A as photographs of the dresser and the drugs and drug paraphernalia located on top of the dresser. (*Id*. at 12-13). Murray testified that he went into Lawson's bedroom "[t]o speak to her with reference to argument [sic] as to the second party involved in the domestic[], and the drugs were in plain view." (*Id*. at 12-13). He further testified that, after he saw the drugs, he asked Lawson about them, and Lawson denied that they belonged to her, and she volunteered to take a drug test to prove they did not belong to her. (*Id*. at 13).

---

[2] During his testimony, Murray drew a diagram of Seagle's house on what sounds like a white dry erase board, which was used to aid his testimony before the trier of fact. (Aug. 2, 2011 Tr. at 10).

{¶11} On cross-examination, Murray testified that, at the time he was dispatched, he did not know whether Seagle or Lawson reported the domestic violence; but instead, that determination is reached after talking to the parties involved. (*Id*. at 15). Murray acknowledged that they had no search warrant and that the home was owned by Seagle, but Murray testified that Seagle asked law enforcement to enter the home to show them the pry marks on his bedroom door. (*Id*. at 15-16). When asked if Lawson invited Officer Collier and him into her room to talk, Murray testified, "I don't recall. The door was opened. We just talked to her. * * * No. I don't believe she did." (*Id*. at 17). Murray testified that Lawson never asked Officer Collier and him to wait a minute for her to come out of the bedroom. (*Id*.). Murray could not recall what Lawson was wearing when they entered the bedroom. (*Id*. at 16-17). Murray denied ever seeing or collecting a container or box from the bedroom; he further denied that the marijuana was located inside a box. (*Id*. at 19).

{¶12} Thereafter, the State rested, and Seagle called his girlfriend, Amber Lawson to the stand. (*Id*.). Lawson testified that, as of May 10, 2011, she was living at 1252 Collingwood Court, Marysville, Ohio. (*Id*. at 20). Lawson testified that, when the officers came to the house, it was dark outside, and she was inside her bedroom, which was separate from Seagle's bedroom. (*Id*. at 20-21). According to Lawson, law enforcement "asked me, can I come back? And I said,

wait a minute." (*Id*. at 21). Lawson testified that she told the officers to wait a minute because she was in her pajamas and wanted to change her clothes. (*Id*.). Lawson testified that the officers did not wait, but instead, just came into her bedroom. (*Id*. at 22). Lawson testified that she did not invite the officers into her bedroom, and they did not have her permission. (*Id*.). Lawson testified that, from where the officers were standing by Seagle's bedroom door, they could not have seen what was in her bedroom. (*Id*.). Lawson testified that there was no marijuana on the dresser when law enforcement entered her bedroom, but there was a cigarette roller and rolling paper on the dresser. (*Id*. at 23). Lawson further testified that the marijuana was inside a container, which she identified as defendant's exhibit A. (*Id*.). Upon cross-examination, Lawson testified that she was clothed and she had a night stand light on in the bedroom when law enforcement entered her bedroom. (*Id*. at 24). Lawson also testified that, when they entered the bedroom, the officers began asking her about an argument she allegedly had with Seagle. (*Id*.).

{¶13} Seagle testified that, on May 10, 2011, he reported to the Marysville Police Department that Lawson and he were having an argument. (*Id*. at 25-26). Seagle testified that the situation had stabilized between the two of them by the time law enforcement arrived. (*Id*. at 26). According to Seagle, he did not have any cuts, scrapes, or bruises, and he was not fearful of Lawson when the police

arrived. (*Id*.). Seagle testified that he showed the police the pry marks on his bedroom door, and that his bedroom is across the hall from Lawson's bedroom. (*Id*.). Seagle also testified that, if he was standing where the officers were standing, he would not have been able to see into Lawson's bedroom, including the night stand. (*Id*. at 26-27). Seagle testified that he did not hear the police officers say anything to Lawson before they entered her bedroom. (*Id*.). He further testified that Lawson had a night light on in the bedroom when the officers entered the bedroom. (*Id*. at 27).

{¶14} "Under [the plain-view] doctrine, an officer may seize an item without a warrant if the initial intrusion leading to the item's discovery was lawful and it was 'immediately apparent' that the item was incriminating." *State v. Waddy*, 63 Ohio St.3d 424, 442, 588 N.E.2d 819 (1992), superseded by constitutional amendment as stated in *State v. Smith*, 80 Ohio St.3d 89, 684 N.E.2d 668 (1997), citing *Coolidge v. New Hampshire*, 403 U.S. 443, 465- 466, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) and *Horton v. California*, 496 U.S. 128, 136, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990). Seagle argues that the officer's initial intrusion leading to the marijuana and drug paraphernalia's discovery was unlawful since Lawson did not consent to the officers entering her bedroom. This argument lacks merit. Law enforcement did not enter the home (or Lawson's bedroom) to conduct a search but to investigate the reported domestic violence,

and the officers had Seagle's express consent to enter the home for this purpose.[3] See *State v. Pamer*, 70 Ohio App.3d 540, 591 N.E.2d 801 (1990), citing *Davis v. United States*, 327 F.2d 301 (9th Cir. 1964). In fact, Seagle reported the domestic violence in the first place, though law enforcement officers were unaware of that fact when they initially reported to the scene. When law enforcement officers entered Lawson's bedroom, the door was wide open and the bedroom was illuminated by a bed-side lamp. After reviewing the record, it is clear that the officers entered Lawson's bedroom to determine her part in the alleged incident of domestic violence—not to search the bedroom for contraband. This is not a consent *search* case, and therefore, this case is distinguishable from those Seagle cites. Since law enforcement's initial intrusion was lawful, the trial court did not err in concluding that the items discovered were admissible in evidence under the plain-view doctrine and denying the motion to suppress. *State v. Schroeder*, 6th Dist. No. WD-00-076, 2001 WL 1308002, *3 (Oct. 26, 2001) (trial court did not err in denying motion to suppress where officers entered the apartment to question a party to a suspected domestic violence and drug paraphernalia was in immediate plain view).

{¶15} Seagle's assignment of error is, therefore, overruled.

---

[3] The parties agreed that Seagle was the owner of the home.

{¶16} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgments of the trial court.

**Judgments Affirmed**

**ROGERS, P.J. and WILLAMOWSKI, J., concur.**