IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
October 2, 2019 Session

## STATE OF TENNESSEE v. NICHOLAUS JONES

**Appeal from the Criminal Court for Shelby County**
No. 15-02733          Chris Craft, Judge

_____

### No. W2018-01421-CCA-R3-CD
_____

A Shelby County Criminal Court Jury convicted the Appellant of possession of heroin with intent to sell, a Class B felony; possession of heroin with intent to deliver, a Class B felony; two counts of possession of a firearm with the intent to go armed during the commission of or attempt to commit a dangerous felony, Class D felonies; and two counts of simple possession of Alprazolam, Class A misdemeanors. After a sentencing hearing, the trial court merged the possession of heroin convictions, merged the possession of a firearm convictions, and merged the simple possession convictions and sentenced the Appellant to an effective sentence of nineteen years in confinement. On appeal, the Appellant contends that the trial court erred by denying his motion to suppress evidence and that the evidence is insufficient to support the convictions. Based upon the oral arguments, the record, and the parties' briefs, we conclude that the evidence is insufficient to show that the Appellant actually or constructively possessed the drugs or gun. Accordingly, the Appellant's convictions are reversed, and the charges against him are dismissed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Reversed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

Eric J. Montierth, Memphis, Tennessee, for the appellant, Nicholaus Jones.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Assistant Attorney General; Amy P. Weirich, District Attorney General; and Jose Leon, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### I. Factual Background

This case relates to the police finding drugs and a handgun in a motel room in which the Appellant and his codefendant, Roy Brandon, were present. In June 2015, the Shelby County Grand Jury indicted the Appellant and Brandon for possessing heroin with intent to sell, possessing heroin with intent to deliver, possessing Alprazolam with intent to sell, possessing Alprazolam with intent to deliver, and four corresponding counts of possession of a firearm with the intent to go armed during the commission of or attempt to commit a dangerous felony. The defendants filed a motion to suppress evidence, which the trial court denied, and they proceeded to a joint trial.

At trial, Officer Hardy Savage of the Memphis Police Department (MPD) testified that on January 23, 2015, he and his partner, Officer Steven Burk, were conducting an investigation and went to a motel room at the Americas Best Value Inn near Interstate 55. They knocked on the door but got no response. Five to seven minutes later, Officer Savage saw the blinds in the room move and told Officer Burk, "'I'm going to get the key.'" Officer Savage explained to the jury that he was not really going to get the key but that he made the statement loud enough for the individuals inside the room to hear it. After Officer Savage made the statement, Brandon opened the door. Officer Savage saw a table or a dresser behind Brandon and saw a plate on the table. A razor blade and a white powdery substance were on the plate, and a second individual was "further on in the back of the room . . . sitting over to the right." Upon seeing the white powdery substance, which appeared to be cocaine, Officer Savage detained Brandon "[t]o preserve the evidence and for further investigation."

Officer Savage testified that while he was handcuffing Brandon at the door, Officer Burk went into the room and detained the second individual, who was the Appellant. Officer Savage said that men's clothing was "laying around" the room, that men's shoes were lined up against the wall, and that the two beds in the room were "disheveled." Officer Savage saw "a lot of baggage" such as suitcases and duffle bags. He patted down Brandon for officer safety and found $409 on his person. The money was in the following denominations: three one-hundred-dollar bills, four twenty-dollar bills, two ten-dollar bills, and nine one-dollar bills. Officer Savage put Brandon into the back seat of his patrol car.

On cross-examination, Officer Savage estimated that he and Officer Burk knocked on the motel room door for five to seven minutes. He acknowledged that he testified at the defendants' preliminary hearing in March 2017. Officer Savage did not say at the hearing that he told Officer Burk he was going to get a key to the room. Instead, Officer Savage said at the hearing that he told Officer Burk, "'[L]ook I'm fixing to go.'"

- 2 -

Officer Steven Burk of the MPD testified that on January 23, 2015, he went with Officer Savage to room 210. The officers knocked on the door, but no one answered. After "a few minutes at least," Brandon answered the door. Officer Savage detained him, and Officer Burk saw a plate inside the room. A razor blade and a white powdery substance were on the plate, and a clear plastic bag containing a white powder was "in the vicinity of that plate." Officer Burk detained the Appellant. He said that he did not remember where the Appellant was standing when he detained the Appellant but that the Appellant "was inside the room when we initially saw him."

Officer Burk testified that he patted down the Appellant for officer safety, that the Appellant had $118 "in different denominations" on the Appellant's person, and that "[t]here was at least one $50 bill in there and two $20 bills." Officer Burk put the Appellant into the back of his patrol car and filled out an arrest ticket. Officer Burk asked the Appellant for his biographical information such as his name, address, and date of birth, but the Appellant gave Officer Burk "an incorrect identity." Officer Burk said that the Organized Crime Unit (OCU) arrived at the motel and that he went with one of the OCU officers to "type up a warrant." Officer Burk obtained a search warrant for the room and returned to the motel.

On cross-examination, Officer Burk testified that he did not remember whether he, Officer Savage, or both of them knocked on the door. Defense counsel asked if both of them were standing at the door when Brandon opened it, and Officer Burk answered,

> I know at one point Officer Savage started to walk away, because we thought, okay, nobody's going to answer the door. And when the door was opened, I don't know if he had made his way back up the staircase and was there, but I know I was right there near the doorway.

Detective Brandon Evans of the MPD's OCU testified that he went with Officer Burk to obtain the search warrant for room 210 and helped execute the warrant. A television and a dresser were just inside the doorway of the room. A small black safe was on the dresser, and the safe was open. A large, clear bag tied with a knot also was on the dresser and contained a white powdery substance consistent with cocaine. A plate with a razor blade was beside the safe. Detective Evans said that during the search, officers found a silver compressor, which was used to compress cocaine or heroin; a marijuana grinder; bags of what appeared to be heroin; pills that appeared to be Alprazolam; a handgun; and a digital scale. He stated that the heroin was wrapped in individual, twenty-dollar packages and that the packaging was consistent with the distribution and sale of narcotics. The officers did not find any syringes or rubber bands to indicate the heroin was for personal use.

- 3 -

On cross-examination, Detective Evans testified that the officers did not find any identification in the room. He said the heroin was in "tenth of a gram" packages that would sell for twenty dollars each and that buyers "might use two 5's and a 10" or "might spend a $20 bill." He explained that "if you've got a lot of narcotics individually packaged, you've got a lot of different currency, generally that goes together as distribution and selling of narcotics."

Sergeant Darryl Dotson of the MPD's OCU testified that he was one of the officers who secured the motel room while Officer Burk and Detective Evans obtained the search warrant. When they returned with the warrant, Sergeant Dotson helped search the room. He said that officers found a digital scale, a grinder, a compressor for compressing drugs into small bricks, a "cutting agent" for drugs, a loaded nine-millimeter handgun, ten Alprazolam pills, and thirty-nine packs of heroin. The officers found the gun in a brown bag that was under the bathroom sink. The officers found the Alprazolam pills, the heroin, and the cutting agent in a black suitcase that was under a clothes rack in a closet. The officers did not find any syringes or lighters.

Rachel Strandquist, a special agent forensic scientist with the Tennessee Bureau of Investigation, testified as an expert in forensic chemistry that she performed chemical analysis on the substances found in the room. One of the white pills was Alprazolam. Agent Strandquist did not analyze the other nine pills because they were consistent in appearance to the Alprazolam pill. Chemical analysis on the white powder did not identify a controlled substance, but chemical analysis on a tan powder showed that the substance was heroin. The total weight of the tan powder was 9.99 grams. Chemical analysis on a tan rock-like substance showed that the substance also was heroin. The rock-like material weighed 0.50 grams.

At the conclusion of Agent Strandquist's testimony, the State rested its case. The defendants did not present any proof, and the jury convicted them of possessing heroin with intent to sell and possessing heroin with intent to deliver as charged in the indictment and the two corresponding counts of possessing a firearm with the intent to go armed during the commission of or attempt to commit a dangerous felony. The jury also convicted the defendants of two counts of simple possession of Alprazolam as lesser-included offenses of possessing Alprazolam with intent to sell and possessing Alprazolam with intent to deliver. The jury acquitted the defendants of the remaining two counts of possession of a firearm with the intent to go armed during the commission of or attempt to commit a dangerous felony. After a sentencing hearing, the trial court merged the Appellant's convictions of possession of heroin, Class B felonies; merged the convictions of possession of a firearm, Class D felonies; and merged the convictions of simple possession, Class A misdemeanors. The trial court sentenced the Appellant to fourteen years, five years, and eleven months, twenty-nine days, respectively, and

ordered that he serve the five-year sentence consecutive to the other two sentences for a total effective sentence of nineteen years in confinement.

## II. Analysis

### A. Motion to Suppress

The Appellant contends that the trial court erred by denying his motion to suppress evidence because he and Brandon were seized without a warrant and without any suspicion or probable cause when the officers remained at the door of room 210 and repeatedly knocked on the door for several minutes. He also contends that the seizure was not supported by reasonable suspicion because the anonymous tip lacked corroboration. The State argues that the trial court properly denied the motion. We agree with the State.

Before trial, the defendants filed a motion to suppress the evidence found in the motel room because the officers illegally seized them when they knocked on the motel room door for three or four minutes. At the outset of the suppression hearing, the defendants testified for the limited purpose of establishing that they had standing to challenge the search of the motel room. Brandon testified that he had a key to room 210, that he had been staying in the room "[a]bout a week, seven days at most," and that he had an expectation of privacy in the room. He said that he obtained the key "[f]rom the lady who had the room." The Appellant testified that on January 23, 2015, the police knocked on the door of the room at 8:00 or 9:00 a.m. and that they knocked "about two or three minutes." The officers did not announce that they were the police, and the defendants did not know the police were knocking on the door. The defendants did not feel free to leave the room. The Appellant said that he spent just one night in the room, that he did not have a key to the room, and that he did not have any belongings there. He arrived at the room about midnight, and Brandon let him in. The woman who had rented the room was there, but the Appellant did not know her. At the conclusion of the defendants' testimony, the trial court ruled that both of the defendants had an expectation of privacy in the motel room and standing to challenge the search.

Relevant to this appeal, Officer Savage testified that on January 23, 2015, the MPD received a "warrant tip" that Brandon was in room 210 at the Americas Best Value Inn. Officer Savage described the motel as having two levels with about sixty rooms on each level. He said he and Officer Burk went to the motel, saw a red Monte Carlo "that was known to belong" to Brandon, and went upstairs to room 210 to conduct a "knock and [talk]." He explained that a "knock and talk" meant that "they basically knock on the door and see who comes to the door." The State asked if Officer Savage announced who was at the door, and Officer Savage responded, "Yes, as you knock on the door, you

knock on the door, 'Memphis Police Department, open the door,' of course it doesn't work." At some point, though, Brandon answered the door. Officer Savage recognized him as "the one we're looking for" and immediately took him into custody. Officer Savage said that he saw "somebody in the back of the room, stick their head around the corner" and that Officer Burk "went to the back" of the room to detain the Appellant.

Officer Savage testified that while he was detaining Brandon, he noticed a table with a plate on it. A razor blade and a white substance were on the plate. Officer Savage and Officer Burk took Brandon and the Appellant out of the room, and Officer Savage verified that Brandon had an outstanding warrant. The officers tried to identify the Appellant, but the Appellant initially gave them a false name. The officers ultimately learned the Appellant's identity and that he also had outstanding warrants. The officers put Brandon and the Appellant into their patrol cars, and the OCU arrived on the scene. Brandon and the Appellant refused to give consent to search the room, so Officer Burk and the OCU officers went to get a search warrant.

Officer Savage testified that about three days before the defendants' arrest, the MPD received a tip that Brandon was at the motel. Officer Savage and Officer Burk went to the motel's front desk, asked if Brandon was registered there, and learned that Brandon was not a registered guest. On January 23, the MPD received a second tip that included the room number. Officer Savage said that as he and Officer Burk approached room 210, they saw "the car that was actually registered to" Brandon. Officer Burk knocked on the door of room 210 several times but got no answer. Officer Savage said that he saw the blinds in the room move and that he told Officer Burk, "[L]ook I'm fixing to go." Officer Savage started downstairs and heard Officer Burk say, "'Savage.'" Officer Savage turned around, went back upstairs, and saw Brandon standing in the doorway of room 210.

On cross-examination, Officer Savage testified that the motel room had only one door and that the hinges were on the left side. Three days before the defendants' arrests, Officer Savage went to the front desk of the motel to find out if a room was registered to Brandon. The owner or manager of the motel told him that Brandon was not registered there. Officer Savage wrote on one of his business cards, "'Roy Brandon, red Monte Carlo SS, Officer Savage.'" He left the card at the desk so that the motel staff would call him if they saw a red Monte Carlo or if Brandon rented a room. Officer Savage said that he did not know if the Monte Carlo was registered to Brandon but that "I just know that that was, per the crime stopper's tip, what he is known the drive."

Officer Savage testified that on January 23, a second tip was received by "the Shelby County Sheriff's Warrant tip site." Officer Savage did not know who placed the tip or whether the tip was credible. The officers returned to the motel because they were

looking for Brandon, not the Appellant. Brandon opened the door to the room, and Officer Savage handcuffed him at the door. Officer Burk then went into the room to detain the Appellant for officer safety and "to identify him and find out who he is, that is all." At that point, the door to the room was "wide open." Officer Savage said the Appellant was very cooperative, except for giving them the wrong name.

Detective Evans testified that he went to the motel on January 23, 2015, "to assist uniformed patrol." He and Officer Burk then went to Detective Evans' office. Based on Officer Burk's information, Detective Evans typed a search warrant for room 210. A magistrate signed the warrant, and Detective Evans and Officer Burk returned to the motel. On cross-examination, Detective Evans testified that the magistrate signed the warrant at 11:23 a.m. Detective Evans estimated that one to one and one-half hours elapsed from the time he and Officer Burk left the motel until they returned with the warrant. During the search of the room, Detective Evans found a silver compressor, a digital scale, a bag of white powder, and a marijuana grinder. Officers also found a weapon, heroin, and Alprazolam pills.

Sergeant Dotson testified that he also responded to the scene and that Detective Evans obtained a search warrant for the room. A bed was on the right side of the room, and a table, a television, and a dresser were on the left side of the room. A plate with a razorblade was on the table or the dresser. Sergeant Dotson said that even if the door to the room was "cracked" open, a person could still see the table and the dresser.

Officer Burk testified for the Appellant that he went to the motel on January 23, 2015, because "[he] had researched on the Shelby County WASP system that a possible wanted party was staying at that hotel." The "wanted party" was Brandon. Officer Burk said that "[t]he tip had mentioned that the wanted party would be operating a red Chevrolet Monte Carlo and that he would be, possibly, selling drugs out of the hotel." The tip did not mention the Appellant.

Officer Burk acknowledged that he and Officer Savage contacted the motel staff and that the staff directed them to room 210. Officer Burk knocked on the door, and Brandon opened it. Defense counsel asked Officer Burk, "How long did you stand at the door knocking?" Officer Burk said he did not know. Defense counsel asked if Officer Burk knocked on the door more than one minute, and he said that he did not recall. He acknowledged testifying at the preliminary hearing that he knocked on the door for three to four minutes.

Officer Burk testified that when Brandon opened the door, the defendants "were close together." Officer Savage detained Brandon, and Officer Burk detained the Appellant. Officer Burk acknowledged that he did not have to go into the room to take

the Appellant into custody. While the officers were detaining the defendants, they saw "in plain view, a razorblade with some white powdery substance in its vicinity." Officer Burk searched the Appellant and found $118 on his person in the following denominations: one fifty-dollar bill, two twenty-dollar bills, one ten-dollar bill, two five-dollar bills, and eight one-dollar bills.

On cross-examination, Officer Burk testified that he did not know who provided the tip to the MPD. He said that he did not remember how long he knocked on the door of room 210 but that the defendants "were free not to open the door." In addition to knocking, Officer Burk announced, "Memphis Police." At some point, he saw a curtain in the room move. When Brandon finally opened the door, Officer Burk and Officer Savage did not enter the room to take the defendants into custody. Officer Burk acknowledged that the defendants came out of the room "on their own" and said that he and Officer Savage arrested them at the door.

At the conclusion of the hearing, counsel for the Appellant argued that the defendants were not seized when the officers initially knocked on the door but that the "encounter matured into a seizure" when the officers remained outside the door and continued knocking because the defendants did not feel free to leave the room. Defense counsel also argued that it would have been physically impossible for the officers to have seen the mirror, white powder, and razor blade in plain view while they were arresting the Appellant at the door. The State responded that the defendants were not seized when the officers continued knocking because the defendants were under no obligation to open the door. The State also contended that as soon as Brandon opened the door and the officers saw the white powder with the razor blade, they had reasonable suspicion to detain the defendants.

In a written order, the trial court denied the motion to suppress. First, the trial court found that the officers were engaged in a consensual encounter based on the "knock and talk" exception to the warrant requirement. Moreover, when Brandon opened the door and Officer Savage recognized him, Officer Savage properly seized him pursuant to a valid warrant. Finally, the trial court accredited the officers' testimony that they could see the plate with the razor blade and white powder on it in plain view from the doorway of the room; therefore, the officers lawfully obtained the information used in the affidavit to acquire the search warrant.

On December 1, 2017, almost nine months after the defendants' suppression hearing and almost seven months after the trial court denied the motion to suppress, the defendants filed a motion to reconsider the trial court's ruling in light of State v. Holly N. Hilliard, No. E2015-00967-CCA-R3-CD, 2017 WL 3738470 (Tenn. Crim. App. at

Knoxville, Aug. 29, 2017). At a pretrial motions hearing, the trial court again denied the defendants' motion to suppress.

In reviewing a trial court's determinations regarding a suppression hearing, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). Thus, "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." Id. Nevertheless, appellate courts will review the trial court's application of law to the facts purely de novo. See State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001). Furthermore, the State, as the prevailing party, is "entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." Odom, 928 S.W.2d at 23. Moreover, we note that "in evaluating the correctness of a trial court's ruling on a pretrial motion to suppress, appellate courts may consider the proof adduced both at the suppression hearing and at trial." State v. Henning, 975 S.W.2d 290, 299 (Tenn. 1998).

The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." Likewise, article 1, section 7 of the Tennessee Constitution provides that "the people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures." Therefore, warrantless searches and seizures inside a home are presumptively unreasonable. Payton v. New York, 445 U.S. 573, 586 (1980). However, "law enforcement officers are not required to seek a search warrant, even if there might be sufficient information and ample time to do so, before they conduct a knock and talk investigation." Id. at *6 (citing Florida v. Jardines, 569 U.S. 1, 8 (2013). That is because a knock and talk is generally regarded as a consensual encounter. State v. Cothran, 115 S.W.3d 513, 521 (Tenn. Crim. App. 2003) (citing Latta v. State, 88 S.W.3d 833, 838 (2002)). As this court has explained,

> "'Absent express orders from the person in possession against any possible trespass, there is no rule of private or public conduct which makes it illegal per se, or a condemned invasion of the person's right of privacy, for anyone openly and peaceably, at high noon, to walk up the steps and knock on the front door of any man's 'castle' with the honest intent of asking questions of the occupant thereof-whether the questioner be a pollster, a salesman, or an officer of the law.'"

Id. at 521 (quoting United States v. Cormier, 220 F.3d 1103, 1109 (9th Cir. 2000) (quoting Davis v. United States, 327 F.2d 301, 303 (9th Cir. 1964))). Law enforcement

may "approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave." Jardines, 569 U.S. at 8.

That said, a consensual encounter at the door to a person's residence may turn into a "constructive entry when the police, while not entering the house, deploy overbearing tactics that essentially force the individual out of the home." United States v. Thomas, 430 F.3d 274, 277 (6th Cir. 2005). "The difference between the two—between a permissible consensual encounter and an impermissible constructive entry—turns on the show of force exhibited by the police." Id. Under the "fruit of the poisonous tree" doctrine, evidence that is obtained through exploitation of an unlawful search or seizure must be suppressed. See Wong Sun v. United States, 371 U.S. 471, 488 (1963). "It is the defendant's burden to establish, by a preponderance of the evidence, that a knock and talk conducted by the police was invalid." Holly N. Hilliard, No. E2015-00967-CCA-R3-CD, 2017 WL 3738470, at *8 (citing State v. Christensen, 517 S.W.3d 60, 72 (Tenn. 2017)).

The Appellant asserts that he and Brandon were seized when the officers continued to knock on the motel door for several minutes. In support of his argument, he relies on Holly N. Hilliard. In that case, Detective Ray Hayes received a telephone call from a confidential informant (CI), who advised Detective Hayes that the defendant, her codefendant, and two minor children were in a home in which the CI had seen the production of methamphetamine that morning. No. E2015-00967-CCA-R3-CD, 2017 WL 3738470, at *1. Detective Hayes decided to conduct a "knock and talk" and assembled a group of five officers to assist him. Id. The six officers went to the home and parked their four vehicles in the driveway, on the adjacent property, and on the road in front of the residence. Id. Detective Hayes and two officers went to the front door while three officers went to the side and rear of the home so they could monitor the home's other doors. Id. At the suppression hearing, Detective Hayes testified that the house was "surrounded . . . with officers" but that the officers did not have their weapons drawn. Id. A uniformed patrol officer knocked on the front door "'multiple times'" and announced "'Sullivan County Sheriff's Office.'" Id. Detective Hayes said that he heard "scattering'" inside the home when the patrol officer knocked and that "they continued knocking and announcing . . . '[p]robably about ten minutes.'" Id. Finally, the defendant opened the door. Id. She was holding a small child, and Detective Hayes smelled a chemical odor associated with the manufacture of methamphetamine. Id. He asked for consent to search the home, but the defendant refused. Id. Due to the dangerousness of methamphetamine laboratories, Detective Hayes decided to conduct a "'protective sweep'" inside the home to look for other children or subjects. Id. at *2. During the sweep, the officers found items commonly used in the manufacture of methamphetamine. See id.

The defendant filed a motion to suppress the evidence, arguing that the "'protective sweep'" was an illegal search. Id. at *1. The trial court found that sufficient exigent circumstances did not exist to justify the officers' protective sweep and that their entry into the residence was an illegal warrantless search. Id. On appeal by the State to this court, the defendant argued that the trial court correctly determined that sufficient exigent circumstances did not exist to justify the warrantless entry of the home and that the officers exceeded the scope of a permissible knock and talk because they knocked on the door for ten to fifteen minutes. Id. at *5. This court agreed with the defendant that the knock and talk exceeded a consensual encounter, explaining:

> The officers did not "knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave." Jardines, [569 U.S. at 8]. Rather, the officers deployed overbearing tactics that we conclude essentially forced Ms. Hilliard to open the door and exit the residence. No reasonable person would have believed that they were free to ignore the officers' prolonged and persistent knocking while announcing their badge of authority. The knock and talk procedure employed by the officers in this case destroyed the consensual nature of the encounter and was unlawful based on the totality of the circumstances.

Id. at *8. Moreover, this court upheld the trial court's ruling that exigent circumstances did not justify the warrantless entry because there was no proof that the officers smelled an odor associated with the manufacture of methamphetamine before the defendant opened the door. Id. at *9.

Turning to the instant case, we agree with the Appellant that the officers' knock and talk went beyond a consensual encounter. The uniformed officers knocked on the door, announced "Memphis Police," and told the occupants to open the door. Although no one answered, the officers remained at the door and continued knocking. Officer Burk testified at the suppression hearing that they knocked for three to four minutes, and Officer Savage testified at trial that they knocked for five to seven minutes. Officer Savage saw the blinds in the room move, indicating that someone was in the room. At the suppression hearing, Officer Savage testified that he told Officer Burk that he was "fixing to go" and that he started going downstairs. Yet, Officer Burk remained at the door. At trial, Officer Savage testified that he told Officer Burk that he was going to get a key to the room. Officer Savage explained to the jury that he was not really going to get the key but that he made the statement loud enough for the person in the room to hear it. At that point, Brandon finally opened the door. Regardless of what Officer Savage said to Officer Burk, the officers' actions demonstrate that they were not going to leave the door until someone opened it. Therefore, as this court found in Holly N. Hilliard, we

- 11 -

conclude that the officers used overbearing tactics that went beyond a consensual knock and talk and that those tactics essentially forced Brandon to open the door.

Nevertheless, we conclude that the Appellant is not entitled to relief on this issue. "For Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." Payton, 445 U.S. at 603. Here, the officers had a warrant for Brandon's arrest. On or about January 20, 2015, the officers received a tip that Brandon was staying at the Americas Best Value Inn and that he was driving a red Monte Carlo. Three days later, the officers received a second tip that Brandon was staying at the motel and that he may be selling drugs out of the motel. The tip included the room number. When the officers went to the motel and approached the room, they noticed a red Monte Carlo. In our view, the officers had reason to believe that Brandon was in the room. Accordingly, they could enter the room to arrest him pursuant to the warrant.

## B. Sufficiency of the Evidence

The Appellant contends that the evidence is insufficient to support his convictions because the evidence does not show that he actually or constructively possessed the drugs or the gun. In support of his argument, he notes that neither the drugs nor the gun were on his person, that neither he nor Brandon said anything to indicate the drugs or gun belonged to them, and that the room was not registered to either defendant. The State argues that the evidence is sufficient to show that the Appellant constructively possessed the drugs and the gun because he was in the motel room with the contraband, he had $118 in cash on his person, and he lied to the police about his identity. We conclude that the evidence is insufficient.

When an appellant challenges the sufficiency of the convicting evidence, the standard for review by an appellate court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); Tenn. R. App. P. 13(e). The State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions concerning the credibility of witnesses and the weight and value to be afforded the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). This court will not reweigh or reevaluate the evidence, nor will this court substitute its inferences drawn from the circumstantial evidence for those inferences drawn by the jury. Id. Because a jury conviction removes the presumption of innocence with which a defendant is initially

cloaked at trial and replaces it on appeal with one of guilt, a convicted defendant has the burden of demonstrating to this court that the evidence is insufficient. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

A guilty verdict can be based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Hall, 976 S.W.2d 121, 140 (Tenn. 1998). "The jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury.'" State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006) (quoting Marable v. State, 313 S.W.2d 451, 457 (Tenn. 1958)). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" Dorantes, 331 S.W.3d at 379 (quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)).

It is an offense for a defendant knowingly to possess a controlled substance with intent to deliver or sell the controlled substance. Tenn. Code Ann. § 39-17-417(a)(4). It is also an offense for a defendant knowingly to possess or casually exchange a controlled substance. Tenn. Code Ann. § 39-17-418(a). Heroin is a Schedule I controlled substance, and Alprazolam is a Schedule IV controlled substance. Tenn. Code Ann. §§ 39-17-406(c)(11), -412(c)(2). Finally, it is an offense for a defendant to possess a firearm with the intent to go armed during the commission of or attempt to commit a dangerous felony. Tenn. Code Ann. § 39-17-1324(a). Possession of a controlled substance with intent to deliver or sell is a dangerous felony. Tenn. Code Ann. § 39-17-1324(i)(1)(L).

Our case law establishes that possession of an object can be either actual or constructive. See State v. Fayne, 451 S.W.3d 362, 370 (Tenn. 2014) (possession of a firearm); State v. Transou, 928 S.W.2d 949, 955 (Tenn. Crim. App. 1996) (possession of drugs). "[A]ctual possession refers to physical control over an item." Fayne, 451 S.W.3d at 370. To find constructive possession, the State must show that the person accused had the power and intention at a given time to exercise dominion and control over the object directly or through others. State v. Shaw, 37 S.W.3d 900, 903 (Tenn. 2001). "In other words, 'constructive possession is the ability to reduce an object to actual possession.'" State v. Cooper, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987) (quoting State v. Williams, 623 S.W.2d 121, 125 (Tenn. Crim. App. 1981)). As this court has explained,

> The mere presence of a person in an area where drugs are discovered is not, alone, sufficient to support a finding that the person possessed the drugs. Likewise, mere association with a person who does in fact control the drugs or property where the drugs are discovered is insufficient to support a finding that the person possessed the drugs.

Id. (Citations omitted.)

Taken in the light most favorable to the State, the evidence at trial shows that on January 23, 2015, Memphis police officers were conducting an investigation and went to the Americas Best Value Inn near Interstate 55. The officers knocked on the door of room 210, and Brandon opened the door. Officer Savage noticed a razor blade and a white powdery substance on a plate in the room and detained Brandon. The officers also noticed the Appellant in the room, and Officer Burk detained him for officer safety. Officers obtained a search warrant for room 210 and found heroin, Alprazolam, items used to package drugs for sale and delivery, and a handgun.

In our view, this evidence is insufficient to support the Appellant's convictions. The police did not find any contraband on the Appellant's person, and fingerprint analysis was not conducted on any of the items seized. Although both of the beds in the room were disheveled, suggesting that both of the defendants had slept there, the State did not present any proof as to who had rented the room or who possessed a key to the room. The State also did not present any proof as to how long the Appellant had been in the room, how long he intended to stay in the room, or whether any of the bags or clothing in the room belonged to him. While the State claims that the $118 found on the Appellant's person was a "significant amount," $118 is not a particularly large quantity of money. In contrast, Brandon had more than $400 on his person. Moreover, Detective Evans testified that the heroin was packaged in twenty-dollar quantities and that many different denominations of currency indicated the selling of narcotics, but Officer Burk only recalled the Appellant's having one fifty-dollar bill and two twenty-dollar bills. The State also claims that the Appellant's giving the police a false name supports his guilt. However, the Appellant's having outstanding warrants, which the jury did not know, just as likely explains his lying to the police about his identity. "[A] conviction for a criminal offense cannot be predicated solely upon conjecture, guess, speculation, or a mere possibility that [the accused] may be guilty." Transou, 928 S.W.2d at 955. We conclude that the State failed to present any proof that the Appellant actually or constructively possessed the drugs or gun in this case and that his convictions must be reversed.

### III. Conclusion

Based upon the oral arguments, the record, and the parties' briefs, we conclude that the evidence is insufficient to support the Appellant's convictions. Accordingly, the Appellant's convictions are reversed, and the charges against him are dismissed.

_____
NORMA MCGEE OGLE, JUDGE

- 14 -